PEOPLE v HARRISON

1. WITNESSES—MINORS—COMPETENCY—STATUTES—DISCRETION.

There was no abuse of discretion in finding a seven-year-old boy competent to testify at a trial within the meaning of statutory provisions where the trial judge discussed the issue with both counsel, held a separate hearing, considered the record of a hearing held on the same issue before a district court, and listened to argument by counsel, and where the trial court specifically concluded that the minor had not been unduly influenced in any way by his mother, by the detective in charge of the case, or by the prosecutor (MCLA 600.2163).

2. CRIMINAL LAW—EVIDENCE—HEARSAY—HARMLESS ERROR.

Admission in a criminal trial of a hearsay statement which recapitulated and was merely cumulative of another witness's earlier testimony was harmless error beyond a reasonable doubt where the original witness was cross-examined by defense counsel.

3. CRIMINAL LAW—INDORSEMENT OF WITNESSES—STATUTES.

A witness need not be indorsed for a particular purpose under the provisions of the statute requiring indorsement of witnesses in criminal cases (MCLA 767.40).

4. CRIMINAL LAW—EVIDENCE—EXPERT TESTIMONY—EVALUATION TIME.

Testimony of an indorsed expert witness in a criminal case was properly admitted even though defense counsel was not provided with the content of this expert testimony until one day before the witness took the stand where the laboratory report on which the witness's testimony was based was given to defense counsel on the same day it became available to the

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses § 129 et seq.
[2] 58 Am Jur, Witnesses § 819.
[3, 4] 58 Am Jur, Witnesses § 3.
[5, 6] 53 Am Jur, Trial § 505 et seq.

assistant prosecutor, defendant's attorney privately interviewed the expert witness without any time limitation after he received the report, and where no request for a continuance to provide further evaluation time was made; under the facts and circumstances defendant received fair notice of the purpose for which the witness was to be called.

5. CRIMINAL LAW—CLOSING ARGUMENT—PROSECUTOR'S REMARKS.

A defendant was not entitled to a mistrial as a result of the prosecutor's closing argument in which the prosecutor reconstructed his theory of the crime based upon the circumstantial evidence and the testimony of the witnesses where during and after the argument defense counsel neither objected nor requested from the trial court any cautionary instructions, because the prosecutor's theory of how the crime was perpetrated was based upon the evidence in the case and any errors in the prosecutor's argument were not so prejudicial they could not have been cured by an instruction.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY.

A defendant was not entitled to reversal of his conviction on a claim of instructional error where the final instructions of the trial court, taken as a whole, adequately and fairly stated the law, and where defense counsel indicated he was satisfied with the instructions as they were presented and made no further requests to charge.

Appeal from Genesee, Thomas C. Yeotis, J. Submitted Division 2 June 6, 1973, at Lansing. (Docket No. 13076.) Decided September 25, 1973.

John H. Harrison was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief Assistant Prosecutor, and *Joel B. Saxe,* Assistant Prosecuting Attorney, for the people.

*Larry J. Stecco,* for defendant on appeal.

Before: HOLBROOK, P. J., and DANHOF and AD-
AMS,* JJ.

ADAMS, J. John Henry Harrison was charged
with first-degree murder in the March 4, 1970
slaying of Jan Logsdon. MCLA 750.316; MSA
28.548. Preliminary examination was held on
March 26, 1970, April 14, 1970, and May 14, 1970.
Defendant was bound over to circuit court on a
charge of first-degree murder. Defendant's trial
commenced on June 22, 1971 and ended on July 9,
1971 when the jury found him guilty of first-de-
gree murder.

### Issue I

*Did the trial court abuse its discretion in finding
a minor witness competent to testify at the trial
within the meaning of MCLA 600.2163; MSA
27A.2163?*

At the preliminary examination, Derrell Snyder,
then six years of age, was barred from testifying
by the district court, which questioned his "sense
of obligation" to tell the truth because, in the
opinion of that court, he did not know what a
"promise" was. The examining magistrate, how-
ever, did find that Derrell had "sufficient intelli-
gence" to testify. During the trial, upon motion of
the prosecutor, the trial court conducted an *in
camera* hearing to determine whether Derrell
(then age seven) was competent to testify at the
trial. After discussing the issue with both counsel,
holding a further separate hearing, considering
the record of the hearing held on this issue before
the district court, and listening to argument by
counsel, the trial court found Derrell Snyder com-

---

* Former Supreme Court Justice, sitting on the Court of Appeals by
assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

petent to testify under the statute. In so doing, the court stated in part as follows:

*"The Court:* In discussing the matter earlier, setting the background for this, I think I failed to indicate that most importantly I had discussed with Derrell Snyder, the youngster involved, in the presence of both counsel, in addition to the other witnesses that I named for the purposes of this so-called competency hearing. I think it is uncontradicted that both Judge Horrigan and this court have indicated that the youngster appears to be intelligent enough to testify. I think that the reservations that Judge Horrigan had, the examining magistrate in this matter, was whether this youngster had the sense of obligation to tell the truth as the statute in question [MCLA 600.2163; MSA 27A.2163] indicates. I think those are the two principal issues that the court has to decide, and I concur with Judge Horrigan, that he has sufficient intelligence, and I disagree with him as to the sense of obligation to tell the truth, because it appears to me that the youngster does have that sense of obligation to tell the truth."

In *McGuire v People,* 44 Mich 286, 287–288; 6 NW 669, 670 (1880), there is an excellent statement by Justice CAMPBELL pertaining to the testimony of a boy who was a few months over six years of age. He points out that if the judge is satisfied to allow the testimony, "the inability of such an inexperienced boy to keep up a consistent false story through the various questionings of a trial is a pretty safe guard against any great danger on that head". See also *People v Walker,* 113 Mich 367; 71 NW 641 (1897); *People v Minchella,* 268 Mich 123; 255 NW 735 (1934).

The trial court specifically concluded that Derrell had not been unduly influenced in any way by his mother, by the detective in charge of the case, or by the prosecutor. We agree with that conclusion. Derrell testified that Miss Logsdon had gone

outside with defendant on a certain night when she had been baby-sitting with Derrell and that he (Derrell) had told this fact at that time over the telephone to Michael O'Neal.

We find no error.

## *Issue II*

*Did the trial court err reversibly by allowing Michael O'Neal to testify at trial regarding a statement made to him by Derrell Snyder in a telephone conversation on March 4, 1970?*

After the testimony of Derrell Snyder, Michael O'Neal testified that at approximately 7 p.m. on March 4, 1970 he called the Snyder home, where Jan was baby-sitting, and talked with Derrell Snyder. O'Neal called back and talked with Derrell again at about 7:30 p.m. The witness stated that Derrell then told him over the telephone that Jan had gone "outside with the man next door, out back". Defense counsel objected, claiming that the statement made to O'Neal was hearsay. The trial judge overruled the objection and the testimony was allowed to stand.

The prosecutor has presented two grounds for the admission of the challenged testimony: 1) that it was not offered to establish the truth of Derrell's telephone statement, but only to pinpoint the particular night on which the call took place; and 2) that Derrell's statement was admissible as a res gestae exception to the hearsay rule.

The first ground relied upon by the people is insufficient, under the facts of this case, to justify admission of the statement. As to the second argument advanced in support of admissibility, the governing rule is aptly stated in *Sexton v Balinski,*

280 Mich 28, 29–30; 273 NW 335, 336 (1937), as follows:

"Statements which are part of the *res gestae* are always hearsay but constitute, as generally classified, an exception thereto based upon the fact they are spontaneous exclamations which by virtue of their origin have a peculiar trustworthiness. The only conditions on which such statements will be allowed in evidence are: (1) That there is a startling occasion, startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting; (2) the statement must have been made before there has been time to contrive or misrepresent; and (3) the statement must relate to the circumstances preceding it."

See also *Holtz v L J Beal & Son, Inc,* 339 Mich 235; 63 NW2d 627 (1954); *Rice v Jackson,* 1 Mich App 105; 134 NW2d 366 (1965); *People v Kelley,* 32 Mich App 126; 188 NW2d 654 (1971).

The record in this case is devoid of evidence justifying a conclusion that Derrell's telephone statement was made under conditions which would render the remark admissible as a res gestae exception to the hearsay rule. The trial judge therefore erroneously admitted the statement into evidence.

As stated earlier, prior to O'Neal's hearsay testimony Derrell Snyder had himself testified that Jan Logsdon left the house with defendant, and he was cross-examined by defense counsel. Since the hearsay statement related by O'Neal recapitulated and was merely cumulative of Derrell's earlier testimony, its admission was harmless error beyond a reasonable doubt. *People v Dykes,* 37 Mich App 555; 195 NW2d 14 (1972).

*Issue III*

*Where an expert witness testified for the prose-*

*cution, and the defense was not provided with the content of this expert testimony until one day before the witness took the stand, did the court err in admitting this evidence?*

Approximately nine months before trial the name of Walter Holz, an expert associated with the Division of Crime Detection of the Michigan Department of Public Health, was endorsed as a witness. The relevant paragraphs in the prosecutor's affidavit and motion requesting endorsement of Holz read as follows:

"3. Certain physical evidence in this case is currently being subjected to certain scientific examinations and analyses, such examination and analyses including, *without limitation,* nuclear activation analysis at the laboratory of Gulf General Atomic, Incorporated, in San Diego, California.

"4. Although no written reports on these analyses and examinations have yet been received, and although said analyses and examinations are believed to be not yet completed, it is the desire of the people to make early disclosure of any witnesses not presently endorsed on the information herein who relate to these analyses and examination." (Emphasis added.)

The scientific report prepared by Holz was furnished to defense counsel one day before Holz testified. At trial, Holz testified exclusively regarding his own analyses (which tended to implicate defendant) and did not discuss analyses performed by Gulf General Atomic, Inc. Defendant now claims that the prosecution endorsed Holz solely for the purpose of testifying regarding scientific examinations performed by Gulf, and also claims that under the pressure of the trial he did not have time adequately to evaluate Holz' final laboratory report.

Although a careful scrutiny of the record does

not compel the conclusion that Holz was endorsed for the limited purpose suggested by defendant, the prosecutor's affidavit accompanying his motion to endorse Holz was somewhat ambiguous. In any case, Holz' testimony was properly received. The witness's final laboratory report was given to defense counsel on the same day it became available to the assistant prosecutor. On the morning after he received the report, defendant's attorney privately interviewed Holz without any time limitation on the interview. He did not request a continuance to provide further evaluation time.

No Michigan cases hold that a witness need be endorsed for a particular purpose under the provisions of MCLA 767.40; MSA 28.980. Under the facts and circumstances of this case, defendant received fair notice of the purpose for which the witness was to be called.

## Issue IV

*Did the trial court err in not granting a mistrial as a result of the prosecutor's final argument?*

In closing argument, after stating, "I would like to suggest to you kind of a theory of the facts of what transpired after that girl was left alone", the prosecutor proceeded to reconstruct his theory of the crime based upon the circumstantial evidence and the testimony of the witnesses. During and after the argument of the prosecutor, defense counsel made no objections, nor did he request from the trial court any cautionary instructions. At the conclusion of all closing argument, defense counsel did move for a mistrial which the court denied.

The prosecutor's theory of how the crime was perpetrated was based upon the evidence in the

case. Any errors were not so prejudicial they could not have been cured by an instruction. *People v Cipriano,* 238 Mich 332; 213 NW 104 (1927); *People v Rowls,* 28 Mich App 190; 184 NW2d 332 (1970). This assignment of error is without merit.

## *Issue V*

*Is defendant entitled to a reversal of his conviction based upon a claim of instructional error?*

Defense counsel initially requested the trial court to "include on voir dire a discussion with the jury relative to circumstantial evidence". The trial court did so. Due to the informality of the voir dire instructions, the judge stated that he would include in his charge "adequate instructions that will be available to counsel prior to the time that those instructions are made to the jury in writing". The court charged the jury with regard to a conviction upon circumstantial evidence and, after so doing, asked defense counsel if he was "satisfied with the instructions as they were presented". Counsel indicated he was and made no further requests to charge. The final instructions of the trial court regarding circumstantial evidence, taken as a whole, adequately and fairly stated the law. We find no error.

The trial court is affirmed.

All concurred.