PEOPLE v CREITH

Docket No. 81196. Submitted February 6, 1986, at Lansing. Decided April 22, 1986.

Defendant, John A. Creith, was convicted of manslaughter following a jury trial in the Oakland Circuit Court. The trial court, Fred M. Mester, J., sentenced defendant to three years probation with the first year to be served in the Oakland County Jail. Defendant appeals. *Held:*

1. The trial court abused its discretion in admitting, under the excited utterance exception to the hearsay rule, testimony by the decedent's roommate concerning what the decedent told him about the assault on the decedent. The statements by the decedent in response to the roommate's questions were insufficiently spontaneous and were not so inherently trustworthy that they can be defined as an excited utterance under MRE 803(2).

2. The trial court's abuse of discretion in the admission of the roommate's testimony regarding the decedent's statements does not provide a basis for a finding of reversible error. Most of the testimony was cumulative to other properly admitted testimony from the defendant and the defendant's girlfriend. Most importantly, the critical statement of the decedent regarding the blow he received to the stomach was properly admitted through the testimony of two nurses as a statement for medical treatment or diagnosis under MRE 803(4).

3. The evidence, viewed in a light most favorable to the prosecution, was sufficient to sustain defendant's conviction. A rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

Affirmed.

1. EVIDENCE — HEARSAY — EXCITED UTTERANCES — RULES OF EVIDENCE.

The excited utterance exception to the hearsay rule applies to a

REFERENCES

Am Jur 2d, Evidence §§ 493-522, 708-737, 1094.

Necessity, in criminal prosecution, of independent evidence of principal act to allow admission, under res gestae or excited utterance exception to hearsay rule, of statement made at time of, or subsequent to, principal act. 38 ALR4th 1237.

statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition; the admission of evidence under this exception is generally left to the trial court's discretion (MRE 803[2]).

2. Evidence — Hearsay — Excited Utterances — Rules of Evidence.

Three requirements must be satisfied before evidence may be admitted under the excited utterance exception to the hearsay rule: the statements (1) must arise out of a startling event, (2) must be made before there has been time to contrive and misrepresent, and (3) must relate to the circumstances of the startling occurrence (MRE 803[2]).

3. Evidence — Hearsay — Medical Treatment Exception — Rules of Evidence.

The medical treatment exception to the hearsay rule applies to statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment (MRE 803[4]).

4. Evidence — Hearsay — Medical Treatment Exception — Rules of Evidence.

A two-part test is applied to determine whether statements were reasonably necessary for diagnosis and treatment for purposes of applying the medical treatment exception to the hearsay rule: (1) the declarant's motive must be consistent with the purpose of the rule, and (2) it must be reasonable for the doctor to rely on the information in diagnosis and treatment (MRE 803[4]).

5. Homicide — Involuntary Manslaughter.

Involuntary manslaughter occurs when a death results from negligence which is gross, wanton or wilful, or criminal, indicating a culpable indifference to the safety of others.

6. Criminal Law — Appeal — Evidence — Sufficiency of Evidence.

The Court of Appeals, in reviewing the issue of whether there was sufficient evidence to support a defendant's conviction, views the evidence to support a defendant's conviction, views the evidence in a light most favorable to the prosecution and determines whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *Margaret G. Horenstein,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Rubiner,* for defendant on appeal.

Before: ALLEN, P.J., and HOOD and R. C. LIVO,* JJ.

PER CURIAM. Defendant appeals as of right from a jury trial conviction for manslaughter, MCL 750.321; MSA 28.553. Defendant was sentenced to three years probation with the first year to be served in the Oakland County Jail. Defendant raises two issues for our review.

The victim, David Yacobelli, suffered from kidney failure and required renal dialysis three times a week. Yacobelli's roommate, Richard Matsch, testified concerning the events leading up to Yacobelli's death. On the evening of May 5, 1981, Matsch left at about 10:00 P.M. to go to see his girlfriend. Yacobelli, who seemed fine at that time, was going to stay at home to hang curtains.

When Matsch returned about 4:00 A.M., the television was on, but Yacobelli was sitting on the couch staring at the wall. His head was bent against his shoulder at a peculiar angle, he was not talking and his face was blank. Matsch had never seen Yacobelli act this way before.

Matsch went to bed and throughout the night he heard Yacobelli in the bathroom vomiting. When Matsch got up around 11:30 A.M. The next morning, Yacobelli was again sitting on the couch and staring at the wall. Yacobelli was pale and was holding his stomach, which appeared to be bloated.

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

Matsch noticed that Yacobelli's speech was slow and he was unable to straighten up his head.

Over defense counsel's objections on the ground of hearsay, the trial court permitted Matsch to testify as to what Yacobelli told him had occurred during Matsch's absence from the apartment. The court ruled that the testimony was within the "excited utterance" exception to the hearsay rule. MRE 803(2). Matsch stated that Yacobelli owed the defendant money for drugs. Yacobelli told Matsch that on the previous evening Yacobelli had seen the defendant tampering under the hood of Yacobelli's car. Yacobelli yelled out of the window at the defendant and the defendant came up to the apartment. When Yacobelli opened the door, the defendant punched Yacobelli in the stomach. The defendant then slammed Yacobelli up against the wall, injuring his neck, and also punched him in the face.

The conversation in which Yacobelli told Matsch what had happened took place at 4:00 A.M. Then, at 11:30 A.M. the next morning, Yacobelli acted out the events for Matsch. Yacobelli also told Matsch that both his vomit and stool were bloody. Later that afternoon when Yacobelli went for his scheduled dialysis, he was immediately admitted to the hospital and, a short time later, he died.

Carol Bielecki, the head nurse administrator at the dialysis center, testified that when Yacobelli came into the center on the date of his death he was holding his abdomen and looked like he was in pain. Bielecki testified without objection that Yacobelli told her that he had a lot of pain in his "belly" and did not feel well because he had been beaten up at his apartment the night before. Yacobelli said he had been punched in the abdomen. Bielecki took him to an examination room where she checked his abdomen and found some swelling

above the belt line. Bielecki then informed Dr. Daitch, one of the staff physicians, who examined Yacobelli and ordered that he be transported to the hospital emergency room.

Ibraham Ahmed, a registered nurse at the emergency room at Mount Carmel Hospital where Yacobelli was taken, also testified without objection that when Yacobelli came to the emergency room the decedent told him he had a pain in his abdomen. Yacobelli told him that he had been beaten at about 2:00 or 3:00 in the morning. He had been struck in the abdomen and the head. Ahmed informed an emergency room physician of the decedent's complaints.

Dr. Horach Mirchandani, a forensic pathologist and Deputy Chief Medical Examiner for Wayne County, performed an autopsy on Yacobelli and found bruises on the sides and back of Yacobelli's head which would be consistent with being slammed against a wall. There was also bruising in the bowel region or mesentery which went through the small intestine which appeared to have been caused by a blow from a blunt object. Dr. Mirchandani found evidence of inflammation of the peritoneum or the membrane covering the abdominal organs which had been brought about by a blunt trauma to the abdomen. The blunt trauma was evidenced by bruising in the tissue of the abdominal organs. He opined that a blow to the abdominal cavity by a blunt object caused Yacobelli to develop peritonitis, which resulted in his death.

Two other doctors, Dr. Laurence Simson, a forensic pathologist, and Dr. Gregorio Ferrer, a nephrologist, also testified after reviewing Dr. Mirchandani's autopsy report and Yacobelli's medical record. Dr. Simson stated that he would classify Yacobelli's death as a homicide. He indicated that

the blunt-force injuries and metabolic disturbances produced an increased level of potassium in the blood, causing Yacobelli's death. Dr. Simson did not believe that the blunt-force injury alone would have caused the level of potassium in the blood to become lethal. Dr. Simson concluded that Yacobelli's nonfunctioning kidneys and his dietary intake significantly contributed to the high level of potassium, in the blood. Dr. Simson believed that the blunt-force injury contributed to Yacobelli's death.

Dr. Ferrer did not believe that the blow to the abdomen contributed to Yacobelli's death. He stated that the high level of potassium was probably related to dietary indiscretion. He did indicate that the bruising would cause the release of some potassium into the blood, but could not tell how much it would contribute to the increased level of potassium.

Defendant's post-arrest statements to the police were admitted without objection. Defendant testified consistently with his post-arrest statement and admitted that an altercation had occurred in Yacobelli's apartment on the night before Yacobelli died. He stated that, in an effort to collect the money he was owed, he slapped Yacobelli across the face causing his nose to bleed and that he pushed Yacobelli by the shoulders against a wall where Yacobelli struck his head. However, he stoutly denied that he ever punched Yacobelli in the stomach and stated that he was aware of Yacobelli's physical condition and that he knew that a blow to Yacobelli's stomach could have serious consequences. Defendant's girlfriend, Sharolyn Arnold, was with defendant at Yacobelli's apartment on the night in question and corroborated defendant's account in all material respects.

Defendant first contends that the trial court erred in allowing Richard Matsch to testify about

David Yacobelli's statements regarding the circumstances and the details of the assault upon him. The trial court admitted the hearsay account based upon the MRE 803(2) "excited utterance" exception to the hearsay rule:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

There are three requirements which must be satisfied for evidence to be admitted under the "excited utterance" exception to the hearsay rule. The statements: (1) must arise out of a startling event; (2) must be made before there has been time to contrive and misrepresent; and (3) must relate to the circumstances of the startling occurrence. *People v Kreiner,* 415 Mich 372, 378-379; 329 NW2d 716 (1982); *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979); *People v Soles,* 143 Mich App 433, 437; 372 NW2d 588 (1985). Admission of hearsay evidence under the "excited utterance" exception is generally left to the trial court's discretion. *People v Lobaito,* 133 Mich App 547, 559; 351 NW2d 233 (1984); *People v Petrella,* 124 Mich App 745, 758; 336 NW2d 761 (1983), aff'd 424 Mich 221; 380 NW2d 11 (1985).

In the instant case, defendant does not dispute that the complained-of statements arose out of a startling event and related to the circumstances of the startling occurrence. Rather, defendant argues that too much time elapsed between the time when Yacobelli was struck and when the state-

ments were made for the statements to be deemed reliable. The trial judge ruled that Matsch's testimony convinced him that the decedent was under a great deal of stress at the time he told Matsch about the assault. The judge concluded that this stress made the decedent's statements reliable because it decreased Yacobelli's opportunity to contrive or fabricate his statements and the judge permitted their inclusion as an "excited utterance".

The court first permitted testimony about Yacobelli's statements that were made to Matsch at 11:30 A.M., at least 9½ hours after the assault. Matsch was permitted to act out Yacobelli's account of the assault, as Yacobelli himself apparently did for Matsch at that time. Later, during cross-examination, defendant counsel commented in a side-bar conference that the jury had already heard everything Yacobelli had told Matsch and agreed to permit testimony concerning Yacobelli's statements made to Matsch at 4:00 A.M.

On the record presented, we conclude that the trial court abused its discretion in admitting evidence of the decedent's statements under the "excited utterance" exception to the hearsay rule. A careful reading of the record suggests that, although Yacobelli apparently spoke to no one else between the assault and his statements to Matsch, his statements were insufficiently spontaneous and instead were, at least in part, made in response to Matsch's questioning. See *People v Centers*, 141 Mich App 364, 372; 367 NW2d 397 (1985); *Holtz v L J Beal & Son, Inc*, 339 Mich 235, 240; 63 NW2d 627 (1954). Similarly, while the court apparently relied upon Judge (now Justice) LEVIN's concurring opinion in *People v Ivory Thomas*, 14 Mich App 642, 652; 165 NW2d 879 (1968), where he stated that the opportunity for contrivance may be af-

fected by the declarant's physical condition during the interval and his shock, pain, unconsciousness or stress, we think that it would be erroneous to conclude in this case that Yacobelli's physical pain greatly reduced the probability that his statements were contrived.

The Federal Advisory Committee Note to FRE 803(2), which is identical to the Michigan rule, states that spontaneity is the key factor. Wigmore explains the crux of this rule:

> Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or at least as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts. [6 Wigmore, Evidence (Chadbourn Rev), § 1747, p 195.]

We cannot agree with the trial court that statements made by Yacobelli in part in response to Matsch's questions and made between 2 hours and 9½ hours after the assault can be found so inherently trustworthy as to be defined as an "excited utterance" under MRE 803(2).

Despite our conclusion that the trial court abused its discretion in admitting evidence of Yacobelli's statements, we nonetheless conclude that the admission of the statements does not provide a basis for a finding of reversible error. As previously noted, defendant's own post-arrest statement, his witness stand testimony and the testimony of his girlfriend admitted his role in the assault of David Yacobelli. The sole material area

on which defendant's and his girlfriend's testimony differed from the victim's statements to Matsch concerned whether defendant delivered the blow to the victim's stomach which two of the medical experts said contributed to or caused Yacobelli's death. However, Yacobelli's statement that defendant punched him in the stomach was properly admitted through the testimony of the two nurses, Carol Bielecki and Ibraham Ahmed.

MRE 803(4) provides that the following is not excluded by the hearsay rule:

> (4) Statements made for purposes of medical treatment or medical diagnosis in connection with treatment. Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

In *People v Wilkins,* 134 Mich App 39; 349 NW2d 815 (1984), lv den 422 Mich 862 (1985), we ruled that a doctor's testimony in a criminal sexual conduct case which related the nine-year-old victim's account of the offense and identified defendant as the perpetrator was admissible under this medical treatment exception. We noted that under the medical treatment exception the patient's statements are likely to be reliable because of the patient's strong motivation to tell the truth and because facts reliable enough to serve as a basis for medical diagnosis are also reliable enough to escape the hearsay proscription.

We then applied a two-part test to determine whether the statements were reasonably necessary for diagnosis and treatment: (1) the declarant's motive must be consistent with the purpose of the

rule, and (2) it must be reasonable for the doctor to rely on the information in diagnosis and treatment. In the instant case, in addition to noting that defendant did not even object to the admission of the two nurses' testimony, we note that this two-part test was met by the purpose of David Yacobelli's statements. The statements can have been made for no other purpose than as a patient seeking medical treatment and were reasonably necessary for purposes of that treatment. Accordingly, we conclude that, although David Yacobelli's statements to Richard Matsch were erroneously admitted under the "excited utterance" exception to the hearsay rule, most of the testimony was merely cumulative to other properly admitted testimony from defendant himself and from his girlfriend. Most importantly, the critical statement of the decedent regarding the blow to the stomach was admissible as a statement for medical treatment or diagnosis under MRE 803(4). We also suggest to the trial court that, in future cases like the instant one, it should make a separate record examination of the witness offering such hearsay statements outside the presence of the jury prior to ruling on their admissibility.

Defendant's second claim of error is that there was insufficient evidence to sustain his manslaughter conviction. Involuntary manslaughter occurs when death results from negligence which is gross, wanton or wilful, or criminal, indicating a culpable indifference to the safety of others. *People v Campbell,* 237 Mich 424, 428; 212 NW 97 (1927). Defendant complains that the medical evidence presented was insufficient to establish beyond a reasonable doubt that defendant's actions caused the death of David Yacobelli. We do not agree.

Although the jury in this case was faced with conflicting evidence from the medical experts as to

whether the blow to the victim's stomach caused his death, the jury was free to choose what to believe and what to disbelieve. Based on this evidence, viewed in a light most favorable to the prosecution, a rational trier of fact certainly could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Frank Johnson,* 146 Mich App 429, 435; 381 NW2d 740 (1985); *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979), *cert den sum nom Michigan v Hampton,* 449 US 885; 101 S Ct 239; 66 L Ed 2d 110 (1980); *People v Petrella, supra,* 424 Mich 259.

Affirmed.