PEOPLE v HUNT

Docket No. 95340. Submitted November 17, 1987, at Detroit. Decided July 18, 1988. Leave to appeal applied for.

Therrian W. Hunt, III, was charged with three counts of criminal sexual conduct in the first degree, arising out of three separate acts of sexual penetration which took place after defendant had assaulted and physically injured the victim. Following a jury trial in Recorder's Court of Detroit, Michael J. Talbot, J., defendant was convicted of two counts of criminal sexual conduct in the first degree, the prosecution having moved to dismiss the third count. Defendant appealed.

The Court of Appeals *held:*

1. The Legislature intended in enacting the first-degree criminal sexual conduct statute to authorize separate punishment of each completed sexual penetration occurring during a sexual assault.

2. The beating and resulting physical injuries to the victim, having been used by the defendant to force or coerce the subsequent sexual penetrations, were sufficient to satisfy the personal injury element to make each of the subsequent penetrations criminal sexual conduct in the first degree.

3. The jury instructions, when read as a whole, adequately informed the jury that to find defendant guilty of first-degree criminal sexual conduct on both counts it would have to find that the prosecution proved beyond a reasonable doubt that each separate sexual penetration was accompanied by a personal injury to the victim.

4. The record fails to support the allegation that defendant was denied effective assistance of counsel either at trial or at sentencing.

Affirmed.

REFERENCES

Am Jur 2d, Rape §§ 3-6, 41.

What constitutes penetration in prosecution for rape or statutory rape. 76 ALR3d 163

Sufficiency of allegations or evidence of serious bodily injury to support charge of aggravated degree of rape, sodomy, or other sexual abuse. 25 ALR4th 1213.

1. Rape — Sexual Penetration — Separate Offenses — Double Jeopardy.

   The Legislature intended in enacting the first-degree criminal sexual conduct statute to authorize separate punishment for each completed sexual penetration occurring during a sexual assault.

2. Rape — First-Degree Criminal Sexual Conduct — Injuries — Multiple Criminal Counts.

   The beating of a victim immediately prior to a series of sexual penetrations by a defendant is sufficient to support the personal injury element necessary to support a conviction of first-degree criminal sexual conduct with respect to each separate penetration where the beating caused physical injury to the victim and was used by the defendant to force or coerce his accomplishment of each act of penetration and where the beating and penetrations were part of one continuous episode (MCL 750.520b[1][f]; MSA 28.788[2][1][f]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Carolyn A. Blanchard,* for defendant on appeal.

Before: MacKenzie, P.J., and Doctoroff and P. J. Clulo,\* JJ.

P. J. Clulo, J. Defendant appeals as of right his conviction of two counts of first-degree criminal sexual conduct, MCL 750.520b(1); MSA 28.788(2)(1), and the lower court's denial of his motion for a new trial and evidentiary hearing. Defendant was sentenced to twenty to forty years on each count, to be served concurrently. We affirm.

On July 29, 1985, at approximately 4:00 P.M., a young girl appeared in the back of a Kentucky

---

\* Circuit judge, sitting on the Court of Appeals by assignment.

Fried Chicken franchise located on West Jefferson in River Rouge. She came into the area running fast and screaming. She appeared to be highly upset and very excited and had a large lump on her head and a bruised lip which had been bleeding. She indicated that she had just been raped and that the rapist was in the lobby of the Kentucky Fried Chicken franchise. The manager called the police while another employee tried to calm the girl down. By the time the police arrived, the man accused by the young girl had left.

At the trial, the victim testified that she was seventeen years of age and had been visiting her sister and the defendant, who was her sister's friend. During a period of time in which the complainant and the defendant were alone in the defendant's car, the defendant said that he wanted to go to his father's house in Detroit to pick up a check. Defendant's father was not at the house and the pair went from there to the house of a friend of defendant. While at this second house, the defendant took the complainant to a small bedroom and began showing pornographic films on the television set in the room. The complainant tried to run, but defendant grabbed her. When she started to scream, the defendant proceeded to beat her about the head and face. He then undressed the complainant and forced her to have oral sex. He put his tongue in her vagina and put his penis in her mouth. Following that, defendant put his penis in complainant's vagina. The complainant testified that they stopped at a Kentucky Fried Chicken for ice because her face was swollen following the beating inflicted by the defendant. This is where she ran to the back of the store and told the persons there that she had been raped and needed help. She also testified that she had taken no drugs or alcohol and that she neither made

advances towards the defendant during the episode nor encouraged him in any way. She insisted that he forced her and that she had no other choice than to submit because she was being beaten.

The defendant took the stand and indicated that he and the complainant had spent the day driving around from place to place for marijuana and cocaine which they shared. He indicated that the pair had sex in the car, that there was no force, and that the complainant had been "coming on to him" for some time. A police officer testified that the complainant did not show any signs of being under the influence of either alcohol or drugs, an observation which was corroborated by an emergency room physician who treated the complainant. The physician indicated that complainant was crying and had swelling, tenderness and pain in her scalp and face, that movement of her jaw caused her pain, that her lip was swollen and that she was not under the influence of drugs or alcohol.

The jury's verdicts of guilty represent their response to one count of fellatio and one count of sexual intercourse. Only two counts went to the jury, the prosecution having moved to dismiss the third count.

Defendant raises the question whether personal injuries inflicted upon the complainant prior to multiple sexual penetrations can constitute aggravating circumstances so that each penetration is first-degree criminal sexual conduct. We are satisfied on the facts of this case that defendant's question can be answered in the affirmative.

Defendant's argument stems from the obligation placed upon the prosecution to prove every element of the crime charged beyond a reasonable doubt, consonant with the due process clauses of the Fourteenth Amendment of the United States

Constitution and Const 1963, art 1 § 17. *People v Wright,* 408 Mich 1, 20; 289 NW2d 1 (1980); *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970). Defendant here was charged with three counts of first-degree criminal sexual conduct contrary to MCL 750.520b(1)(f); MSA 28.788(2)(1)(f). It is clear from the reading of the statutory scheme defining the elements of first-degree criminal sexual conduct that an act of criminal sexual conduct in the first degree is committed where there is sexual penetration as defined by the act under any one of the enumerated circumstances listed. *People v Garrow,* 99 Mich App 834, 837-838; 298 NW2d 627 (1980). The first Michigan case dealing with the relationship between the sexual act and the enumerated circumstances of § 520b(1) was *People v Johnson,* 406 Mich 320; 279 NW2d 534 (1979), where the Supreme Court held that one sexual penetration, even if accompanied by more than one of the aggravating circumstances enumerated in the statute, may give rise to only one criminal charge for purposes of trial, conviction, and sentencing. After reviewing conflicting Court of Appeals decisions, the Court stated, *id* at 330:

> We conclude that it was the intent of the Legislature to delineate precisely the scope of MCL 750.520b; MSA 28.788(2) by providing that when a sexual penetration is accompanied by any of the aggravating circumstances enumerated in the statute, such penetration constitutes criminal sexual conduct in the first degree. It appears from the face of the statute that the gravamen of MCL 750.520b; MSA 28.788(2) is sexual penetration accomplished under any of the enumerated circumstances.

Shortly after its decision in *People v Johnson, supra,* the Supreme Court peremptorily reversed

two first-degree criminal sexual conduct convictions in *People v Nelson,* 406 Mich 1020; 281 NW2d 134 (1980). The reversal was based on its recent decision in *Johnson, supra;* however, the Court did let stand two other convictions of criminal sexual conduct in the first degree based on one act of intercourse and one act of fellatio upon one complainant during the same criminal transaction. The relationship with these two cases is referenced by this Court in *People v Brown,* 105 Mich App 58, 69; 306 NW2d 392 (1981), aff'd 419 Mich 458 (1984).

In *Brown,* the armed defendant kidnapped the complainant and sexually penetrated her four times. He was charged with first-degree criminal sexual conduct during the felony of kidnapping and was also charged with first-degree criminal sexual conduct while armed with a weapon. While his conviction for the first count was reversed because of deficient instructions on the asportation element of kidnapping, this Court noted:

> We realize that the jury, in convicting defendant of one count of csc while armed with a dangerous weapon, found that the prosecution had proved defendant was armed during the csc offenses. Therefore, defendant could have been convicted of all three offenses if he had been charged with committing both csc offenses while armed with a weapon. [*Brown, supra,* p 68, n 3.]

In *People v Dowdy,* 148 Mich App 517, 521; 384 NW2d 820 (1986), the defendant pled guilty to kidnapping, felony-firearm, and five counts of first-degree criminal sexual conduct. In affirming his convictions for all five counts, the *Dowdy* Court stated:

> In light of the language and focus of the statute,

we believe the Legislature intended to punish separately each criminal sexual penetration. . . . The offense of first-degree criminal sexual conduct has been completed after sexual penetration has occurred by any one of the enumerated circumstances. From the language of the statute, it appears that the Legislature intended to authorize separate punishment for each completed sexual penetration. We conclude that defendant's sentences for five acts of penetration are not for the "same offense" . . . .

Whether physical injury prior to multiple sexual penetrations can raise all penetrations to first-degree criminal sexual conduct was addressed by this Court in *People v Payne,* 90 Mich App 713; 282 NW2d 456 (1979), as a question "apparently of first impression." In *Payne,* the complainant was awakened in bed by the defendant, who beat her about the face and then performed multiple sexual penetrations. He was convicted of five counts of first-degree criminal sexual conduct based on the aggravating circumstance of personal injury. The majority in *Payne* held, *id.* at 718-719:

What the prosecution showed by the evidence it submitted to the jury was one act of csc I and five acts of csc III (except for one instance where the jury found a lesser offense). Third-degree sexual conduct, in this case, is simply the sexual assault through force or coercion but without the injury. And this is what took place in all but the first attack. The initial beating affects the latter assaults in that it is part of the force or coercion through which defendant accomplished his assault. The use of the beating in this manner in these subsequent assaults is acceptable since there were additional instances of fear associated with each additional assault. But there were no additional injuries associated with the latter assaults. Holding on to the complainant's arm between acts did

not create an injury sufficient to raise the assault from CSC III to CSC I.

The Legislature included the highest possible punishment in this state in the penalty provision for first-degree criminal sexual conduct. Before this penalty may be imposed the prosecutor must show all of the elements of the crime. To the extent certain elements are lacking, the offender does not go unpunished; rather, he is punished according to the lesser crime committed. In the instant case, defendant was convicted five times of CSC I and was sentenced five times to the maximum penalty of life in prison. Yet all of the elements of CSC I were shown only once. Only the first count can carry a conviction of CSC I; the other counts, having no evidence to support the injury element but having evidence to support all elements of CSC III and having a jury verdict which found all of those elements, must be reduced to convictions of third-degree sexual conduct. The accompanying punishments are to be commensurate with the actions of defendant and the penalties intended by the Legislature.

In this case, the complainant testified that she was hit in the temple, the back of the head, the mouth and the eyes after which the defendant immediately performed multiple acts of sexual penetration. After a careful review of the cases, we are constrained not to follow the majority decision in *Payne*. We are persuaded by both the rationale of the dissent in *Payne* as well as the reasoning of this Court in *Brown* and *Dowdy*. The beating visited upon the complainant immediately prior to the series of sexual penetrations is sufficient to supply the element of personal injury with respect to each of the subsequent penetrations so as to support multiple convictions under MCL 750.520b(1)(f); MSA 28.788(2)(1)(f). We fail to see any distinction between this beating and an ongoing criminal act such as the use of a deadly

weapon during multiple penetrations or, for that matter, any other felony committed in close temporal proximity with the acts of penetration. The evidence in this case shows that the beating inflicted upon the plaintiff, which caused physical injury and was used by the defendant to force or coerce his accomplishment of multiple sexual penetrations, was part of a continuing series of sexual assaults. The physical injury is a common element for each of the assaults under these circumstances. There was never any indication of the defendant's intention to discontinue the attack during the entire episode. See dissenting opinion by KAUFMAN, P.J., *Payne, supra,* pp 725-726.

The next question raised by the defendant is whether the trial court accurately instructed the jury of the personal injury requirement and the statute. It is alleged by the defendant that the lower court failed to specify that the prosecutor had to prove beyond a reasonable doubt that personal injury had to accompany each separate count of criminal sexual conduct in the first degree.

In *People v Burgess,* 153 Mich App 715, 726; 396 NW2d 814 (1986), this Court stated:

> Jury instructions are reviewed in their entirety in order to determine if reversible error occurred and are not extracted piecemeal in an effort to establish error requiring reversal. Even where instructions are imperfect, there is no error if the instructions "fairly presented to the jury the issues to be tried and successfully protected the rights of the defendant."
>
> A verdict will not be set aside based on an alleged error in the jury instructions where no objection was made to the alleged erroneous instruction at trial unless it resulted in a miscarriage of justice. A miscarriage of justice occurs

when an erroneous or omitted instruction pertains to a basic and controlling issue in the case.

The *Payne* panel addressed the precise question defendant raises on appeal and stated that it would be "unnecessarily cumbersome and a poor administration of justice" to require the trial court to instruct "on all the elements of criminal sexual conduct for each individual count of criminal sexual conduct." *Payne, supra,* p 722.

In the instant case, the trial court gave instructions on the presumption of innocence, reasonable doubt, defendant's prior convictions, the distinction between what is and what is not evidence, the nature and effect of rulings on motions and objections, the interpretation of defendant's running away, the effect of inconsistent statements by witnesses during the course of trial, and the credibility of witnesses. The trial court then stated:

> Now let's deal with the elements of the offense charged here. We are dealing with three counts. Each count will be given separate and independent consideration by you. You will be rendering, in effect, three separate verdicts.

This was followed by instruction on lesser included offenses in general, the law on corroboration, resisting and consent in criminal sexual conduct. The trial court then gave the elements of third-degree criminal sexual conduct, fellatio, cunnilingus and sexual intercourse. The court then stated:

> Now the charge that's actually before you of course is a charge of criminal sexual conduct first degree. All of the elements I have given to you also require the people prove beyond a reasonable doubt in all three counts. There is then an aggravating circumstance which elevates it from crimi-

nal sexual conduct third degree to first degree. That's what the People are charging here, that it was, in point of fact, those aggravating circumstances in each count. That is, the People have to demonstrate to you that the defendant caused personal injury to the complainant. Personal injury means bodily injury. It can also include disfigurement, chronic pain, loss or impairment of a sexual organ, or mental anguish. Mental anguish means suffering which occurs at the time of the alleged act. And then, of course, once again the People have to show that it was force or coercion used.

The court concluded its instructions by stating:

In this case—and I will be giving you a verdict form. I'll have it typed up. Now we are dealing with three counts. That is, as you know, the crime, three counts of criminal sexual conduct first degree. There are separate crimes, and the prosecution is charging the defendant committed all of them. The fact that the defendant is charged with more than one crime is not evidence. Each charge has to be considered separately in light of all the evidence in this case. You may return a verdict of guilty of all or any one or any combination of these charges, guilty of any lesser included offense of criminal sexual conduct third degree, or return verdicts of not guilty.

Defendant cites *People v Shipp,* 68 Mich App 452; 243 NW2d 18 (1976), lv den 405 Mich 837 (1979), for the rule that, where the trier of fact gives a proper instruction and subsequently gives an improper instruction, it is presumed that the jury followed the improper instruction. Defendant further argues that the trial court's instructions are infirm because they do not specify that the prosecutor had to prove beyond a reasonable doubt that personal injury had to accompany each sepa-

rate count of first-degree criminal sexual conduct. The trial court specified that the jury would be rendering "three separate verdicts," and that the people were charging "those aggravating circumstances in each count." Applying *Burgess, supra,* that a jury charge is read as a whole, and *Payne, supra,* that the trial court need not instruct on each individual count of criminal sexual conduct, we are satisfied that defendant's contention has no merit.

Finally, the defendant argues that he was denied the effective assistance of counsel and raises five separate allegations of failure to act on the part of his lower court counsel.

The state standard for effective assistance of counsel was established in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). It is a two-pronged test in which defense counsel "must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interests." *Garcia, supra,* p 264. The second prong requires that defense counsel avoid mistakes so serious that "but for this mistake defendant would have had a reasonably likely chance of acquittal." *Garcia, supra,* p 266.

Defendant argues that failure to file a motion to quash at the preliminary examination forced defendant to face three counts of first-degree criminal sexual conduct rather than one count of first-degree criminal sexual conduct and two counts of third-degree criminal sexual conduct. This issue is rendered moot by our ruling in defendant's first issue. In addition, based on a review of the preliminary exam transcript, there is sufficient evidence to support the magistrate's findings. A motion to quash would have been frivolous.

Defendant next argues that defense counsel

failed to object to the hearsay evidence presented by Officer John Westerdale, who testifed: "I had a witness tell me he (defendant) jumped into I believe it was a white small Escort station wagon." Defendant's theory of the case, that he was not with complainant after the sexual encounters, was thus weakened. However, the statement of the witness could have come in as an excited utterance. See MRE 803(2); *People v Gee,* 406 Mich 279, 282; 278 NW2d 304 (1979). Also, the testimony was cumulative to complainant's testimony. Even if erroneous, admission of hearsay is harmless when the facts are shown by other competent testimony. *People v Hoerl,* 88 Mich App 693, 702; 278 NW2d 721 (1979). Finally, even if defendant's theory as to what he did after the sexual encounter is weakened, he is not prejudiced because what he did after the incident is irrelevant.

Defendant next argues that failure to object to the jury instructions constituted ineffective assistance of counsel. We have concluded, however, that the jury instructions were not defective.

Defendant next argues that trial counsel was ineffective by failing to investigate and develop an insanity defense based on defendant's drug dependency. A criminal defendant is denied effective assistance of counsel by his attorney's failure to properly prepare a meritorious insanity defense. *People v Parker,* 133 Mich App 358, 363; 349 NW2d 514 (1984). The defendant is entitled to a new trial if this omission by counsel deprives him of a reasonably likely chance for acquittal. *Garcia, supra,* p 266. While MCL 768.21a(2); MSA 28.2044(1)(2) states that "[a] person who is under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his alleged offense shall not thereby be deemed to have been legally insane," this Court has held that

an insanity defense is not absolutely precluded if a defendant is "actually and demonstrably rendered insane by the ingestion of mind-altering substances." *People v Conrad,* 148 Mich App 433, 441; 385 NW2d 277 (1986). The Supreme Court in *People v Blocker,* 393 Mich 501, 508, 510; 227 NW2d 767 (1975), stated that the issue of incompetence can only be raised by evidence of incompetence.

In the instant case, defendant testified at trial that he is addicted to cocaine. The evidence of that addiction was his testimony that after the encounter with complainant he had a bad reaction. Defendant presented no other evidence of incompetence. By contrast, in *Conrad, supra,* testimony as to the defendant's condition by a forensic examiner showed strong evidence that the defendant had a meritorious insanity defense.

Finally, defendant argues that trial counsel failed to point out inaccuracies in the presentence report. Defendant was given two opportunities for allocution, and had two counsel to speak for him because at the first sentencing date, January 10, 1986, his original counsel did not appear but sent a replacement. The trial court rescheduled sentencing for January 15, 1986, at which time the original counsel was present. Both counsel had read the report. Further, defendant himself testified at trial to the three areas he raised on appeal as not being corrected by trial counsel: (1) drug treatment program; (2) ownership of the house on Woodingham; and (3) defendant's employment. Defendant cites nothing to indicate that counsel's failure to provide additional information rendered counsel's assistance ineffective.

We have also reviewed defendant's ineffective assistance of counsel argument under the federal standard of *Strickland v Washington,* 466 US 668;

104 S Ct 2052; 80 L Ed 2d 674 (1984). We are satisfied that our decision on this question would be the same under either standard. See *People v Dalessandro,* 165 Mich App 569; 419 NW2d 609 (1988).

Affirmed.