PEOPLE v MEEBOER

Docket No. 119408. Submitted July 31, 1989, at Lansing. Decided December 4, 1989.

Douglas E. Meeboer was convicted of criminal sexual conduct in the first degree following a jury trial in Genesee Circuit Court, Judith A. Fullerton, J. At trial, a pediatrician was permitted to testify, over a defense objection, that during her examination of the six-year-old victim for evidence of penetration the victim indicated that it was defendant who penetrated her. Defendant appealed. The Court of Appeals affirmed, holding that the doctor's testimony concerning the victim's identification of defendant as the person who had sexually penetrated her came within the medical treatment exception to the hearsay rule. Unpublished opinion per curiam of the Court of Appeals, decided April 6, 1988 (Docket No. 97072). Defendant sought leave to appeal to the Supreme Court. The Supreme Court, in lieu of granting leave, remanded to the Court of Appeals for reconsideration in light of *People v LaLone,* 432 Mich 103 (1989). 432 Mich 930 (1989).

On remand, the Court of Appeals *held:*

1. Since the identity of the person causing the sexual penetration is important to medical care and treatment of the victim with respect to the possible contraction of a sexually transmitted disease, the testimony of the doctor was properly admitted under the medical treatment exception to the hearsay rule.

2. Even if the doctor's testimony was inadmissible hearsay, reversal is not mandated because the testimony of the doctor was merely cumulative to the child's testimony at trial and the admission of that testimony was harmless beyond a reasonable doubt.

Affirmed.

SULLIVAN, J., dissented. He would hold that the doctor's testimony concerning the victim's identification of defendant was not admissible under the medical treatment exception to

REFERENCES

Am Jur 2d, Witnesses § 242.

See the Index to Annotations under Children; Hearsay.

the hearsay rule and that admission of such testimony cannot be said to be harmless error. He would reverse defendant's conviction and remand for a new trial.

1. EVIDENCE — HEARSAY — MEDICAL TREATMENT.

A physician may properly testify at a trial for first-degree criminal sexual conduct based upon the alleged sexual penetration of a minor female concerning a statement made by the child during the physician's physical examination as to the identity of the person who penetrated her, since the medical treatment exception to the hearsay rule is applicable under such circumstances because the identity of the person who engaged in the sexual penetration of the child is reasonably necessary to the medical care and treatment of the child for any possible sexually transmitted disease (MRE 803[4]).

2. EVIDENCE — HEARSAY — HARMLESS ERROR.

The erroneous admission of out-of-court statements of a minor child under the medical treatment exception to the hearsay rule to corroborate the child's in-court testimony may be considered harmless error where the child's in-court testimony is credible and convincing beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Barbara J. Safran,* for defendant on appeal.

Before: GRIBBS, P.J., and SULLIVAN and GRIFFIN, JJ.

GRIFFIN, J. Defendant, Douglas Edward Meeboer, appeals as of right from a jury conviction of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), for the rape of a six-year-old girl whom we shall identify as "Amy." On appeal to this Court, defendant's conviction was affirmed. *People v Meeboer,* unpub-

lished per curiam opinion of the Court of Appeals, decided April 6, 1988 (Docket No. 97072). On application for leave to appeal, the Supreme Court, in lieu of granting leave to appeal, remanded for reconsideration in light of *People v LaLone,* 432 Mich 103; 437 NW2d 611 (1989). 432 Mich 930 (1989). After considering *LaLone* and applying it to the facts of the instant case, we again affirm.

I

On January 9, 1986, defendant and his family, the Meeboers, picked up Amy at her home. The Meeboers, including defendant, were friends with Amy's mother and planned to baby-sit for Amy for a couple of days. At the time of the offense, Amy was six years old, defendant was twenty.

Amy was with the Meeboer family from January 9, 1986, to January 11, 1986. At some time during this period, she and defendant were left alone in the Meeboers' home.

At trial, six-year-old Amy testified that, while she and the defendant were alone watching television, defendant "Dougie" Meeboer "put" his "privates" in her mouth and "put" his "privates" on and in her "privates." Amy further testified that defendant "put" his hand on her "privates" and, after taking it out, put his "privates" on her again and "took it out." Defendant then pulled up his pants and told Amy not to tell anyone.

Amy returned home on January 11, 1986, and did not mention the incident to her mother. A little over a week later, on January 20, 1986, Amy was staying with her aunt and uncle. While her aunt was bathing Amy, she noticed that Amy's vagina was sore. When her aunt first asked Amy if someone had "played naughty with her," Amy said

no, but later told her aunt that "Dougie had messed with her."[1]

The aunt and uncle then contacted Amy's mother and the police. Amy's mother examined Amy and found her vagina to be red and puffy. Amy's mother proceeded to take Amy to the hospital.

On January 22, 1986, Amy was examined by Dr. Karen A. Bentley, a pediatrician and child abuse specialist at the Hurley Medical Center in Flint. At trial, Dr. Bentley testified that at the time of her examination, Amy's vagina was open quite wide and her hymen was torn and escalloped. Amy's vagina measured nine millimeters and anything above five is evidence of penetration. Although Dr. Bentley could not tell how long ago penetration had occurred, it was her opinion that there was both penile and digital penetration of Amy's vagina.

Over objection, Dr. Bentley testified that during the examination Amy said "Dougie" was the man who had genital contact with her. This testimony by the pediatrician was consistent with the victim's own trial testimony in which she had identified the defendant as the perpetrator.

On appeal, defendant argues that the admission of Amy's statement to her physician constitutes reversible error. We disagree.

II

In our original opinion, we held that the testimony of Dr. Bentley concerning the victim's statement identifying the defendant as the perpetrator was admissible as a hearsay exception under MRE 803(4). On this issue we stated:

---

[1] A hearsay objection to this testimony was raised by the defendant and sustained by the lower court.

Defendant first argues that the trial court erred by allowing, over his objection, testimony of the six-year-old victim's examining physician which related the child's account of the sexual assault and identified defendant as the perpetrator. We disagree.

The decision to admit evidence rests within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *People v King,* 158 Mich App 672, 678; 405 NW2d 116 (1987). MRE 803 provides in pertinent part:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

*          *          *

"(4) Statements Made for Purposes of Medical Treatment or Medical Diagnosis in Connection With Treatment. Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment."

We hold that the statements came within the medical treatment exception to the hearsay rule and were therefore admissible. Here, there is nothing to indicate that the child's statements to the physician were other than as a patient seeking treatment. *People v Wilkins,* 134 Mich App 39, 44; 349 NW2d 815 (1984), lv den 422 Mich 862 (1985); *People v Creith,* 151 Mich App 217, 226-227; 390 NW2d 234 (1986).

Secondly, the information elicited from the child was necessary to her diagnosis and treatment. [*Wilkins, supra*] at 45. The examining physician, Dr. Bentley, was a pediatrician and Director of the Child Abuse Team at Hurley Hospital. She explained that her responsibilities included examining the children to determine if their injuries have been sustained as the result of abuse. Information as to what happened and by whom gives her an

idea of what to ask and look for during the examination and to assess how the child is handling the sexual abuse so that she can allay any fears or apprehensions during the examination. By doing so, Dr. Bentley is able to diagnose and treat a victim of sexual assault. Consequently, the source of the sexual assault as well as the child's account of the incident were necessary to Dr. Bentley's diagnosis and treatment.[1]

---

[1] We are unpersuaded by defendant's attempt to distinguish *Wilkins, supra* and *In re Rinesmith,* 144 Mich App 475; 376 NW2d 139 (1985), lv den 424 Mich 855 (1986), merely because these cases involved incestuous assaults and unlike here, this made the identity of the perpetrator necessary for treatment. Instead, we believe that the source of a sexual assault upon a child is no less important in cases where the perpetrator is not a member of the family.

---

Subsequent to the release of our opinion, the Supreme Court decided *People v LaLone, supra,* which addressed the scope of hearsay exception MRE 803(4) as it relates to statements made by a victim to a psychologist during the course of a psychological evaluation. In ruling that such statements were not admissible, the Supreme Court placed heavy reliance upon the fact that MRE 803(4) limits the hearsay exception to statements made for *medical* treatment and statements made for *medical* diagnosis in connection with treatment:

A psychologist treats mental and emotional disorders rather than physical ones:[4] Lying to one's health care provider about symptoms and their general causes would be detrimental to the patient, and it is, in part, for this reason that we permit the introduction of such hearsay statements. It is therefore fair to say that, while medical patients may fabricate descriptions of their complaint and the general character of the causes of these complaints, we would think it less likely

that they will do so than psychological patients. In addition, although there are psychological tests, fabrications of physical complaints would seem to be far easier to discover through empirical tests than are fabrications which might be heard by an examining psychologist. Indeed, statements which are untrue, and which the examining psychologist knows to be untrue, may nevertheless serve as a basis for accurate diagnosis and treatment. Thus, statements made in the course of treatment of psychological disorders may not always be as reliable as those made in the course of the treatment of physical disorders.

---

[4] We note that a psychologist does not provide "medical treatment." However, our holding lies not in a technical reading of the rule, but with broader concerns about the reliability of the hearsay statements.

---

[*LaLone, supra* at 109-110, opinion by BRICKLEY, J.]

As further support for the exclusion of the statement in *LaLone,* the Supreme Court stated that the victim's statement to her psychologist was not inherently reliable under the circumstances. The Court also questioned whether the identity of the perpetrator was reasonably necessary for the victim's psychological evaluation or psychological treatment.

III

On reconsideration, we find *LaLone* distinguishable from the instant case and not controlling. At the outset, we note *LaLone* involved hearsay statements made to a *psychologist,* not to a *physician.*

Second, unlike *LaLone* in which the statements were made in connection with a *psychological evaluation,* the victim's statement in the instant case was made in connection with her *medical* care and *treatment.*

Third, in contrast to *LaLone*, in which the Supreme Court questioned whether the identity of the perpetrator was reasonably necessary in connection with the victim's psychological evaluation, we have no doubt in the instant case that the identity of the perpetrator was reasonably necessary for Amy's medical care and treatment. We note that following a rape the identity of the perpetrator as the "inception or general character of the cause or external source thereof" (MRE 803[4]) is medically necessary to treat or rule out the transmission of venereal diseases or Acquired Immune Deficiency Syndrome. With venereal diseases at epidemic levels and with the rapid spread of AIDS, the perpetrator of every rape needs to be identified and evaluated as part of the victim's care and treatment. Accordingly, we hold that in cases of rape the identity of the attacker is reasonably necessary for the victim's medical care and treatment.

Finally, we conclude that the victim's statement to her physician was reliable. Although the Supreme Court in *LaLone* doubted the reliability of the victim's statement to the psychologist, the Court recognized that statements made by patients to their *physicians* are inherently reliable. *LaLone, supra.*

The reliability of Amy's statement to Dr. Bentley is further strengthened by other testimony which is consistent and cumulative. Collaboration occurred through Amy's trial testimony on direct and cross-examination in which she identified the defendant as the perpetrator and from her disallowed statement to her aunt. Accordingly, unlike *LaLone*, we find the victim's statement to her physician to be reliable.

IV

Although we hold that the lower court properly

admitted the victim's statement to her physician pursuant to MRE 803(4), were error to have occurred we would hold it to be harmless due to its cumulative nature. MCL 769.26; MSA 28.1096[2] and MCR 2.613(A).[3]

In an analogous context, our Court held in *People v Foreman (On Rem)*, 179 Mich App 678, 680, 682; 446 NW2d 534 (1989), that reversible error does not occur as a result of the improper admission of an alleged excited utterance made by a child victim of first-degree sexual misconduct if the hearsay statement is cumulative to the child's in-court testimony. In *Foreman, supra,* we stated:

> Having reviewed *Straight* [*People v Straight*, 430 Mich 418; 424 NW2d 257 (1988)], we now believe that the children's statements in this case, made approximately one month after the last visitation with defendants, were inadmissible under MRE 803(2). Nevertheless, we believe the error was harmless because the hearsay statements were cumulative to the children's in-court testimony in this case which was credible and convincing beyond a reasonable doubt. MCR 2.613(A); MCL 769.26; MSA 28.1096.

[2] MCL 769.26; MSA 28.1096 provides:

No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

[3] MCR 2.613(A) provides:

Harmless Error. An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

\* \* \*

We are convinced that admission of the challenged testimony was harmless error because the facts in this case were shown by other competent testimony. *People v Kregger,* 335 Mich 457; 56 NW2d 349 (1953); *People v Hunt,* 170 Mich App 1, 13; 427 NW2d 907 (1988); *People v Hoerl,* 88 Mich App 693, 702; 278 NW2d 721 (1979); *People v Christensen,* 64 Mich App 23, 32-33; 235 NW2d 50 (1975), lv den 397 Mich 839 (1976); *People v Vargas,* 50 Mich App 738, 742; 213 NW2d 848 (1973), lv den 392 Mich 815 (1974); *People v Harrison,* 49 Mich App 546, 551; 212 NW2d 278 (1973), lv den 392 Mich 779 (1974); *People v Dykes,* 37 Mich App 555, 558; 195 NW2d 14 (1972).

v

On remand, we find the instant case distinguishable from *People v LaLone* and hold that the victim's statement to her physician identifying the defendant as the perpetrator of the rape was properly admitted pursuant to MRE 803(4).

Affirmed.

GRIBBS, P.J., concurred.

SULLIVAN, J. *(dissenting).* I dissent.

I would reverse defendant's conviction and remand the case to the trial court for a new trial. The hearsay testimony of the six-year-old victim's examining physician, which related the victim's identification of defendant as the perpetrator of the sexual assault, was improperly admitted at trial. Moreover, such admission was not harmless error.

The hearsay exception at issue both in this case and in *People v LaLone,* 432 Mich 103; 437 NW2d 611 (1989), provides for admission of

[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment. [MRE 803(4).]

In *LaLone,* our Supreme Court concluded that the trial court improperly admitted testimony of a psychologist which consisted of the complainant's hearsay statements that she had been sexually abused by the defendant, her stepfather. Such testimony, the Court held, did not come within the literal or intended purpose of the MRE 803(4) exception. *LaLone, supra,* pp 116-117. I believe that the victim's hearsay statements admitted in this case do not come within that exception. The victim's statements identifying defendant as the perpetrator, made to the physician almost two weeks after the alleged sexual assault, were not "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment *and* describing . . . the inception or general character of the cause or external source" of the injury. See *LaLone, supra,* pp 111, 113. Nor was the victim a member of defendant's household. I would therefore reverse defendant's conviction and remand this case for a new trial during which the statements would not be admitted.