# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PERCY EDWARD TAYLOR,

        Defendant-Appellant.

UNPUBLISHED
December 11, 2018

No. 338601
Jackson Circuit Court
LC No. 16-004024-FC

---

Before: CAVANAGH, P.J., and MARKEY and LETICA, JJ.

PER CURIAM.

Defendant, Percy Edward Taylor, was convicted by a jury of four counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(c), kidnapping, MCL 750.349, unlawful imprisonment, MCL 750.349b, two counts of assault with intent to do great bodily harm less than murder, MCL 750.84, and third-offense domestic violence, MCL 750.81(4).[1] The trial court sentenced Taylor as a fourth-offense habitual offender, MCL 769.12, to 35 to 75 years' imprisonment for each count of CSC-I, to be served consecutively. Taylor was also sentenced to concurrent 20- to 40-year terms of imprisonment for each of his remaining convictions. Taylor appeals as of right. We affirm.

## I. BACKGROUND

Taylor and EC had a long-term "on-again, off-again" relationship. EC testified that on the night in question, she picked Taylor up at his request in order to drive him to his father's house. On the way, Taylor became belligerent, cursed, and called EC demeaning names until they arrived. Taylor then took the keys out of the ignition, punched her in the face, and told her she was not going anywhere. EC told Taylor that she needed to use the bathroom, so Taylor took

---

[1] We note that after the date of the offenses involved in this case, MCL 750.81 was amended to classify an additional type of assault and battery offense (involving a pregnant victim). See 2016 PA 87. This amendment resulted in renumbering of certain subsections of the statute. Under both the former version of MCL 750.81(4), as amended by 2012 PA 366, and the current version of MCL 750.81(5), a third conviction for domestic violence is treated as a felony. All references to MCL 750.81(4) within this opinion refer to the former version of the statute.

-1-

her into the house. When EC sat on the toilet, Taylor stood over her and called her names. When she responded, Taylor punched her a few more times. Taylor refused to let EC go outside and ordered her into the living room where he beat her and made her perform oral sex on him. Taylor delivered several punches to EC's face and then made her turn around. Taylor attempted anal sex, but had difficulty fully penetrating EC, so he continued to punch her. To avoid being punched any further, EC suggested that they have vaginal sex. Taylor penetrated her vaginally until a dog barked, signaling that Taylor's father had returned home.

Taylor ordered EC to get dressed and not to let his father see her face. EC walked out to her car with her head down and said nothing to Taylor's father, who was waiting in his car so that he could park in his driveway once Taylor and EC left. Taylor drove EC around town and repeatedly threatened to kill her if she tried to run. He told her that he had a gun, that he would blow her head off, and that the only way she would be leaving was dead.

Taylor eventually drove to EC's house, where EC complied with Taylor's further sexual demands until Taylor passed out. EC retrieved her phone and contacted Taylor's father by text message. She described what happened to her and sent him a photo of her battered face. They exchanged several messages, and Taylor's father told her to call the police. EC called the police and, when they arrived, she told them that Taylor physically and sexually assaulted her. EC declined offers of transportation to the hospital and said she did not want to undergo a Sexual Assault Nurse Examination (SANE) rape kit because Taylor had not ejaculated throughout the evening. After the police left with Taylor in custody, EC's son later took her to Allegiance Hospital.

The medical staff were mainly concerned that EC might lose her eyesight because of her severe head injury. They performed a lateral canthotomy on her eye to relieve the pressure and then transported her to the University of Michigan Hospital where she received further treatment. Physicians at the second hospital determined that EC had several orbital fractures and she eventually required surgical treatment to repair the damage. A SANE kit examination was not performed at either hospital and the records and recollections of the medical staff were inconsistent as to whether EC reported that she had been sexually assaulted by Taylor.

Taylor testified that he and EC had consensual sex on the night in question, that he did not hit her, and that she was uninjured when he fell asleep. Throughout the trial, the defense cast doubt on EC's credibility, suggesting that she called the police to report a domestic violence incident—without mentioning sexual assault—because she was making things up. According to Taylor, EC had harmed herself in the past. Taylor also described his own physical disabilities, including neck, spine, cardiovascular, and pulmonary problems that made it difficult for him to ambulate without a cane or wheelchair.

## II. INEFFECTIVE ASSISTANCE

Taylor first argues that he was denied the effective assistance of counsel. We disagree.

A claim of ineffective assistance of counsel "presents a mixed question of fact and constitutional law." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). We review the trial court's findings of fact, if any, for clear error. *People v Petri*, 279 Mich App

407, 410; 760 NW2d 882 (2008). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Armstrong*, 490 Mich at 289. Constitutional issues are reviewed de novo. *Id*. Although Taylor preserved the issue by filing a motion for remand in this Court, his motion was denied and no evidentiary hearing has been held. Consequently, our review is limited to mistakes apparent on the trial court record. *People v Seals*, 285 Mich App 1, 19-20; 776 NW2d 314 (2009).

Under Michigan law, "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). "Defense counsel's performance must be measured against an objective standard of reasonableness." *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy." *Id*. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

On appeal, the defendant bears the burden of establishing that defense counsel provided ineffective assistance by showing that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (quotation marks and citation omitted). Further, the defendant has the burden of "establishing the factual predicate for his claim." *Id*.

Taylor argues that defense counsel provided ineffective assistance by calling Taylor's father as a defense witness. Review of the record, however, does not establish that defense counsel's decision fell below an objective standard of reasonableness. Taylor's father's testimony clarified the reasons for his text messages and indicated that he merely responded to EC's one-sided description of the events. He also provided other testimony that was favorable to the defense. For example, Taylor's father stated he had never known Taylor to possess a gun. He also confirmed he did not see EC's injuries before she left the house with Taylor and that Taylor did not appear upset or angry that evening. Lastly, Taylor's father confirmed Taylor's reports of physical disabilities, including the fact that Taylor required the use of a cane at the time of the incident.

While it is true that calling Taylor's father as a witness allowed the prosecution to reiterate the content of text messages he exchanged with EC concerning the assaults, the messages had already been introduced through EC's testimony. Given the cumulative nature of the testimony, we disagree with Taylor's contention that his father's testimony had "devastating consequences." To the contrary, by allowing Taylor's father to explain the thoughts behind the messages, it took some of the sting out of EC's testimony. For instance, after EC told Taylor's father what had happened that night, he responded with a message saying, "You can't let this go." Standing alone, the message suggests that Taylor's father believed EC's description of the events. But when Taylor's father was confronted with this message at trial, he explained that he

sent the message because "if this [EC's black eye] had actually came from [Taylor] then you can't just lay down and say, okay, it happened, it happened." Similarly, explaining a message in which he stated that Taylor could not be trusted, Taylor's father explained, "If anyone has actually physically harmed you in that sense I don't believe—it's an opinion I guess, I don't believe that you, the person that has been injured, can trust them." The jury could infer from these answers that Taylor's father wanted to help EC if she had, in fact, been injured by Taylor but that he did not necessarily believe EC's allegations to be true or that Taylor was inherently untrustworthy. Because there were strategic reasons for defense counsel to call Taylor's father as a witness—namely, supporting aspects of Taylor's defense theory and lessening the value of the text messages to the prosecution's case—Taylor has not demonstrated that defense counsel's decision to call Taylor's father as a witness was objectively unreasonable.

Taylor also argues that defense counsel performed ineffectively by failing to object to hearsay statements introduced by three police officers. For the reasons explained in Part III of this opinion, the statements were admissible at Taylor's trial. Accordingly, defense counsel was not ineffective for failing to raise a futile or meritless objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In his Standard 4 brief, Taylor argues further that his counsel provided ineffective assistance by not properly investigating the matter and strategizing the defense, by failing to impeach EC and the testifying officers, and by failing to call favorable defense witnesses. We disagree.

With respect to Taylor's claim that counsel failed to investigate the matter or strategize with him, we note that Taylor made a similar complaint by way of written correspondence that was read to the court on the first day of trial. Specifically, Taylor complained that he was missing critical witnesses—doctors who would testify about his physical limitations and disabilities, the emergency room physician who first treated EC, and an individual who helped Taylor with household chores—and a variety of evidence, including his prison visitation records, 911 dispatch recordings, Facebook messages, and text messages. It is apparent from the record that counsel was aware of Taylor's complaints and had taken steps to procure available evidence and testimony. To the extent that counsel was unable to obtain some of the evidence requested by Taylor, counsel nevertheless attempted to elicit the same substantive information from various witnesses throughout the trial.

Contrary to Taylor's assertion on appeal, it does not appear that defense counsel's performance deprived him of a substantial defense. According to Taylor, the best defense he could have presented rested upon discrediting EC and emphasizing that his physical disability would have made it difficult for him to assault EC in the manner she alleged. But this *was* the defense presented by counsel at trial in his opening statement, direct and cross-examination of various witnesses (including impeachment of EC), and closing argument. We find no mistakes apparent on the record and Taylor has not established that he was deprived effective assistance based on counsel's failure to present cumulative evidence of a defense theory that was, in fact, presented to the jury. Accordingly, we cannot conclude that defense counsel's performance in this regard was objectively unreasonable.

Taylor also claims that his counsel provided ineffective assistance by failing to fully cross-examine EC. We disagree.

The record reflects that defense counsel sought to cross-examine EC regarding previous allegations of rape by three men when she was a minor. The prosecution moved in limine to preclude such examination on the basis that Michigan's rape-shield statute, MCL 750.520j, prohibited cross-examination of EC regarding her past sexual conduct. Defense counsel opposed the prosecution's motion, but the trial court ruled in favor of the prosecution. Defense counsel was, therefore, barred from cross-examining EC on the topic. The fact that defense counsel did not cross-examine her about previous sexual conduct by order of the trial court does not permit the conclusion that defense counsel's performance fell below an objective standard of reasonableness.

In sum, all of the bases on which Taylor claims his counsel provided defective performance lack merit. Taylor has failed to overcome the presumption that he was provided effective assistance of counsel. See *Solmonson*, 261 Mich App at 663. Instead, the record establishes that defense counsel's performance was objectively reasonable. Defense counsel acted pursuant to a reasonable triable strategy and did not prevent Taylor from presenting a substantial defense. Accordingly, Taylor has not demonstrated entitlement to relief. See *Carbin*, 463 Mich at 600.

Related to his claim of ineffective assistance, Taylor also argues that he was denied a fair trial because he wanted to fire his appointed counsel and the trial court erred by not inquiring about his reasons for wanting to do so. We disagree.

The Michigan Supreme Court clarified in *People v Ginther*, 390 Mich 436, 441; 212 NW2d 922 (1973), that, although an indigent defendant lacks entitlement to choose his own lawyer, he may become entitled to replace his appointed counsel if he can show good cause. The Court explained:

> When a defendant asserts that his assigned lawyer is not adequate or diligent or asserts, as here, that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusion.
>
> A judge's failure to explore a defendant's claim that his assigned lawyer should be replaced does not necessarily require that a conviction following such error be set aside. [*Id*. at 441-442.]

The record reflects that the trial court actually considered Taylor's request to fire his fourth appointed counsel and asked Taylor to explain his reasons. Taylor advised the trial court that he lacked the rapport he felt he needed with his counsel. Taylor also asserted that his appointed counsel refused to file his motions and had not filed his witness list. But the record reveals that counsel *did* file a witness list that included witnesses requested by Taylor. Defense counsel also filed a number of pretrial motions on Taylor's behalf. As the trial court aptly explained to Taylor, counsel is not required to file motions he deems frivolous. See *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). In the absence of record evidence

demonstrating that counsel failed to file a potentially meritorious motion, we will not conclude that defense counsel was ineffective or that the trial court erred by rejecting Taylor's request for yet another appointed attorney.

## III. HEARSAY

Taylor next argues that the trial court erred by admitting hearsay testimony from three police officers regarding what EC told them.[2] We disagree.

Taylor did not raise this issue before the trial court and, therefore, failed to preserve it for appeal. We review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To establish entitlement to relief under the plain-error doctrine, a defendant must demonstrate that (1) an error occurred, (2) the error was clear or obvious, and (3) the error was prejudicial in that it affected the outcome of the lower court proceedings. *Id*. at 763. If a defendant satisfies those requirements, reversal is warranted only if the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*.

Police officer Andrew Mosier testified that he was one of the first two officers to arrive at EC's home in response to her 911 call. Officer Mosier stated that EC told him that Taylor assaulted her multiple times, including punches to the face, and "forced sexual acts on her as well." Detective Wesley Stanton also responded to the scene and later testified that EC told him that Taylor beat her up, sodomized her, and forcibly "ramm[ed] his penis in her mouth." Detective Gary Schuette spoke with EC three days after the incident and agreed at trial that the things she told him were consistent with the information he had learned from other officers' reports and with "what she's continued to say."

Under MRE 802, hearsay is not admissible unless an exception applies. MRE 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The challenged testimony does not fall within the definition of hearsay because the out-of-court statements made by EC were not offered to prove the truth of the matter asserted. See *People v Harris*, 201 Mich App 147, 151; 505 NW2d 889 (1993) ("Where a witness testifies that a statement was made, rather than about the truth of the statement itself, the testimony is not hearsay."). Throughout the trial, defense counsel questioned whether and when EC told police officers and medical personnel that she had been sexually assaulted in order to support the defense theory that EC's delayed disclosure was evidence of fabrication. Thus, the relevance of the out-of-court statements lay in the fact that EC alleged sexual assault promptly and regularly, rather than whether the allegations were true. With respect to Detective Schuette, we also note that the

---

[2] To the extent that Taylor challenges the admission of similar hearsay testimony by "medical personnel" in his Standard 4 brief, he effectively abandoned the issue by failing to identify the testimony with which he takes issue. See *Petri*, 279 Mich App at 413. In any event, EC's statements to the hospital physicians would, in all likelihood, by admissible under the hearsay exception for statements made for purposes of medical treatment. See MRE 803(4).

challenged testimony did not repeat the content of EC's out-of-court disclosure. Detective Schuette merely described the steps he undertook in investigating the case and conveyed that he was already aware of the allegations EC described during their interview based upon his review of other officers' reports. These statements were, therefore, not hearsay and not subject to exclusion under MRE 802.

Moreover, even if we were to conclude that the statements repeated by Officer Mosier and Detective Stanton amounted to hearsay, their admission was proper under MCL 768.27c(1), which provides:

> Evidence of a statement by a declarant is admissible if all of the following apply:
>
> (a) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant.
>
> (b) The action in which the evidence is offered under this section is an offense involving domestic violence.
>
> (c) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of a statement made more than 5 years before the filing of the current action or proceeding is inadmissible under this section.
>
> (d) The statement was made under circumstances that would indicate the statement's trustworthiness.
>
> (e) The statement was made to a law enforcement officer.

Here, EC made the statements to two law enforcement officers when they responded to her 911 call. EC told Officer Mosier that Taylor assaulted her multiple times, including punches to the face, and "forced sexual acts on her as well." She also told Detective Stanton that Taylor beat her up and sexually assaulted her. In other words, EC was describing the manner in which Taylor physically harmed her almost directly after the incident concluded. Although Taylor maintains that EC's accusations were false, we find nothing inherently untrustworthy about the circumstances of her disclosure. See MCL 768.27c.[3] Lastly, because the statements were

---

[3] The statute provides the following nonexclusive list of circumstances relevant to the issue of trustworthiness:

> (a) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested.
>
> (b) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive.
>
> (c) Whether the statement is corroborated by evidence other than statements that are admissible only under this section. [MCL 768.27c(2).]

offered as evidence in a case involving domestic violence, they meet all the requirements for admission under MCL 768.27c(1).

Indeed, Taylor does not appear to seriously dispute this conclusion. Instead, he argues that the hearsay statements should have been excluded because it is not apparent from the record that the prosecution provided proper pretrial notice of its intent to introduce this evidence, as required by MCL 768.27c(3) (requiring disclosure of evidence offered under MCL 768.27c "not less than 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown"). But assuming, arguendo, that the prosecution failed to comply with the notice requirements for admission of such evidence, it does not follow that Taylor is entitled to appellate relief on this basis. Under plain-error review, Taylor must demonstrate that an obvious error affected his substantial rights. See *Carines*, 460 Mich at 763. Taylor alleges that he was prejudiced by the admission of this evidence because it may have bolstered EC's credibility, but he does not explain how the *lack of notice* was prejudicial. Had the required notice been provided, it is improbable that Taylor could have successfully moved to exclude it because, for the reasons already explained, it was admissible under MCL 768.27c(1). Nor has Taylor asserted that he would have approached the trial differently had he received the required notice. Accordingly, Taylor has not demonstrated entitlement to relief. See *People v Jackson*, 498 Mich 246, 278-279; 869 NW2d 253 (2015) (finding lack of notice did not amount to error requiring reversal where the underlying evidence was substantively admissible and there was no indication defense presented at trial would have been different).[4]

## IV. SUFFICIENCY OF THE EVIDENCE

Taylor next argues that the prosecution presented insufficient evidence to prove any of the charges against him. We disagree.

We review de novo questions of law such as a challenge to the sufficiency of evidence in support of a criminal conviction. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review "the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000) (quotation marks and citation omitted). "The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial." *Id*. at 400. It is the role of the trier of fact, and not the appellate court, to weigh evidence and evaluate the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Further, the "prosecutor need not negate every reasonable theory consistent with innocence." *Nowack*, 462 Mich at 400.

In his principal brief on appeal, Taylor argues that there was insufficient evidence to support the two CSC-I convictions that arose from EC's accusations of sexual assault occurring

---

[4] In light of our resolution of this issue, we need not address the parties' arguments concerning the admissibility of the statements under MRE 801(d)(1)(B).

at her home.[5] Taylor was convicted of CSC-I under MCL 750.520b(1)(c), which requires proof of two elements: (1) sexual pentation (2) that occurred during the commission of another felony. See *People v Waltonen*, 272 Mich App 678, 686; 728 NW2d 881 (2006). In charging Taylor with each count of CSC-I, the prosecution alleged that Taylor sexually penetrated EC while committing felony domestic violence. See former MCL 750.81(4). The jury was therefore instructed that it should find Taylor guilty of CSC-I if it determined beyond a reasonable doubt that the sexual assaults "occurred under circumstances that also involved domestic violence." According to Taylor, there was insufficient evidence to support two counts of CSC-I because the evidence showed that no domestic violence took place at EC's home. Thus, any sexual penetration that occurred there could not satisfy the second required element.

Domestic violence occurs when an individual assaults or assaults and batters another person with a specified type of relationship, including a person "with whom he or she has or has had a dating relationship." MCL 750.81(2). See also *People v Cameron*, 291 Mich App 599, 613-614; 806 NW2d 371 (2011). An assault is "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *Cameron*, 291 Mich App at 614 (quotation marks and citation omitted). A battery is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id*. (quotation marks and citation omitted). Taylor argues that there was no evidence that an assault or battery occurred at EC's house and points to her testimony explaining that she did whatever Taylor told her to do by that point in the evening. We disagree.

In *People v Martinez*, 190 Mich App 442, 444-445; 476 NW2d 641 (1991), this Court rejected a similar challenge to the sufficiency of the evidence concerning a defendant's conviction for CSC-I under MCL 750.520b(1)(f) (forced or coerced sexual penetration involving the infliction of personal injury to the victim). In that case, the defendant beat the victim for approximately 20 minutes before forcing her to perform fellatio, after which the defendant performed cunnilingus on the victim. *Id*. at 443-444. The defendant argued that the evidence was sufficient to support his CSC-I conviction arising from the fellatio, but not for the second count arising from the cunnilingus. *Id*. at 444. This Court disagreed, relying on *People v Hunt*, 170 Mich App 1, 8; 427 NW2d 907 (1988), in which the Court held that a "beating visited upon the complainant immediately prior to the series of sexual penetrations is sufficient to supply the element of personal injury with respect to each of the subsequent penetrations so as to support multiple convictions under MCL 750.520b(1)(f)." *Martinez*, 190 Mich App at 444-445 (quotation marks omitted). The *Martinez* Court affirmed the defendant's convictions, observing that "the penetrations . . . occurred within ten minutes of the assault and there was no indication of the defendant's intention to discontinue the attack during the entire episode." *Id*. at 445.

---

[5] Taylor was charged with five counts of CSC-I. Counts I, II, and III arose from EC's allegations of oral, vaginal, and anal penetration, respectively, all of which took place at Taylor's father's house. Counts IV and V arose from EC's allegations of oral and vaginal penetration that occurred later at her house. Taylor was convicted on Counts I, II, IV, and V and acquitted of Count III.

While Taylor was charged under a different subdivision of MCL 750.520b, we find the reasoning articulated in *Martinez* persuasive. Although the majority of the nonsexual, physical violence took place at Taylor's father's house, Taylor continued to exercise control over EC throughout the evening. EC testified that when Taylor drove them to her house, he said he had a gun and would kill her. EC agreed that she never saw a gun, but she was under the impression that Taylor was armed and remained fearful for her own safety and the safety of her children, who were also in the house. And like in *Martinez*, there was no indication that Taylor intended to discontinue the domestic violence until he fell asleep at EC's house, after having engaged in further sexual acts with her. Thus, at minimum, there was a continuing assault taking place, *Cameron*, 291 Mich App at 614, and a reasonable jury could have found Taylor guilty of both challenged counts of CSC-I beyond a reasonable doubt.

In his Standard 4 brief, Taylor also argues that the record lacks sufficient evidence to support the balance of his convictions because each conviction stemmed from unproven allegations of domestic violence. According to Taylor, there was no admissible[6] evidence of domestic violence, particularly in light of the prosecution's stipulation that his physical ailments caused him to bruise, swell, and bleed easily. From this, we presume that Taylor is relying on the testimony from various witnesses stating that they were unsure whether Taylor had any physical injuries on his hands at the time he was arrested. We find this argument unpersuasive because EC testified at length regarding the domestic violence inflicted upon her throughout the evening. Her testimony, if credited by the jury, provided sufficient evidence from which the jury could find Taylor guilty of the charged offenses. Although the lack of apparent injury to Taylor's hands may have cast doubt on EC's testimony, we will not interfere with the jury's determination regarding credibility. *Kanaan*, 278 Mich App at 619. In addition, the prosecution is not required to disprove other theories consistent with innocence. *Nowack*, 462 Mich at 400.

## V. DUE PROCESS

In his Standard 4 brief, Taylor argues that the trial court violated his due-process rights in a number of ways.[7] The majority of Taylor's arguments were not presented below and are, therefore, unpreserved. Accordingly, unless otherwise noted, our review is limited to plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. To establish entitlement to relief under the plain-error doctrine, a defendant must demonstrate that (1) an error occurred, (2) the error was clear or obvious, and (3) the error was prejudicial in that it affected the outcome of the lower court proceedings. *Id*. at 763. If a defendant satisfies those requirements, reversal is warranted only if the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id*.

---

[6] Taylor repeats several of his evidentiary arguments in challenging the sufficiency of the evidence. Those arguments are addressed elsewhere in this opinion.

[7] Although Taylor characterizes his arguments as issues of due process in his statement of the question presented, most of the issues do not present constitutional concerns and will not be addressed as such. See *People v Blackmon*, 280 Mich App 253, 261; 761 NWd 172 (2008) ("Merely framing an issue as constitutional does not make it so.").

## A. RIGHT TO CONFRONT WITNESSES AND PRESENT A DEFENSE

Taylor first argues that the trial court violated his constitutional rights to confront witnesses and present a defense by precluding evidence of EC's prior accusation of rape and her mental illnesses. We disagree.

Although Taylor raised the issue of presenting evidence of EC's mental illness and her previous rape allegations, Taylor did not present this evidentiary issue as a constitutional claim in the trial court. Therefore, he failed to preserve his claim that his constitutional rights were violated. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). "Appellate review of unpreserved constitutional claims is for plain error affecting the defendant's substantial rights." *Id*.

"A defendant has a constitutionally guaranteed right to present a defense, which includes the right to call witnesses." *People v Yost*, 278 Mich App 341, 379; 749 NW2d 753 (2008). Although the extent of witness examination is generally left to the trial court's discretion, there is a "dimension of the Confrontation Clause that guarantees to defendant a reasonable opportunity to test the truth of the witness' testimony." *People v Hackett*, 421 Mich 338, 347; 365 NW2d 120 (1984). While these rights are constitutionally guaranteed, they are not without limits. "[T]he accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Yost*, 278 Mich App at 379 (quotation marks and citation omitted). In some circumstances, these rights may also "bow to accommodate other legitimate interests in the criminal trial process." *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982) (quotation marks and citation omitted).

Only relevant evidence is admissible. MRE 402. Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence, however, is not always admissible. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." MRE 403.

Taylor argues that evidence of EC's diagnosed mental illness and prescribed medications had relevance to challenge her credibility. He contends that such evidence would explain why she would make up the story about nonconsensual sex. Taylor also wished to present evidence of her mental illness to bolster his argument that the injuries she sustained were self-inflicted, as she had inflicted injuries upon herself in the past because of her mental condition. The trial court ruled that EC's mental illnesses and her diagnoses were inadmissible, but qualified that Taylor could inquire regarding medication EC took on the day of the incident and examine her regarding whether that medication interfered with her ability to perceive the events and remember them accurately. During trial, the court again ruled that evidence of EC's bipolar disorder was inadmissible, but allowed Taylor to present evidence of previous incidents in which she intentionally hurt herself, resulting in hospitalization. But the trial court cautioned that without a proffer outside the presence of the jury, Taylor could not talk about EC's bipolar diagnosis or her treatment with a psychologist. The record indicates that Taylor never made such a proffer at trial.

While credibility of a witness is always relevant, *People v Coleman*, 210 Mich App 1, 8; 532 NW2d 885 (1995), nothing in the record supports Taylor's contention that the victim's mental illness or medications called her credibility into question. In the absence of any evidence or indication that the victim's mental illness or medication had "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence," MRE 401, the trial court did not plainly err when it excluded the evidence of EC's diagnosed mental illness. MRE 402.

Consistent with the trial court's ruling, defense counsel cross-examined EC regarding the medication she took on the day of the incident. She testified that she took three medications but that they did not impair her mental acuity or her memory after the incident. The record also reflects that the trial court permitted Taylor to testify at length about EC's previous self-inflicted injuries and related hospital stays. Taylor abstained from testifying that EC suffered from bipolar disorder, but his testimony allowed the jury to infer that she suffered from some mental illness. Taylor testified that he never hit her and that she may have hurt herself. Taylor was not precluded from advancing his defense theory by the trial court's preclusion of evidence concerning EC's mental illness. Accordingly, the trial court did not err when it excluded the evidence of EC's mental illness.

Even if we were to conclude that the trial court's exclusion of evidence of EC's mental illness diagnosis constituted error, such error would not require reversal because it is improbable that the error would have been outcome determinative. *Carines*, 460 Mich at 763. In this case, EC described the events in detail and did not equivocate during her cross-examination. Medical evidence of her severe injuries corroborated parts of her story. Taylor's testimony at trial simply failed to persuade the jury that his alternative explanation for her injuries had merit. We conclude that Taylor has not demonstrated that the claimed error determined the outcome of his trial. Therefore, Taylor has failed demonstrate entitlement to appellate relief.

Turning to Taylor's claim that he should have been permitted to cross-examine EC regarding her prior rape allegations against third persons, the trial court precluded Taylor from raising that issue at trial because it ran afoul of Michigan's rape-shield statute. Taylor does not appear to dispute this ruling, but instead maintains that the exclusion of this evidence violated his right to confrontation and right to present a defense. We disagree.

Subject to narrow statutory exceptions that are not at issue in this case, the rape-shield statute generally bars evidence of "*all* sexual activity by the complainant not incident to the alleged rape." *People v Duenaz*, 306 Mich App 85, 91; 854 NW2d 531 (2014) (quotation marks and citation omitted). But where the defendant proffers evidence of a complainant's prior *false accusations* of sexual assault, the admissibility of the evidence does not implicate the rape-shield statute. *People v Jackson*, 477 Mich 1019 (2007). In those circumstances, "such evidence may not only be relevant, but its admission may be required to preserve a defendant's constitutional right to confrontation." *Hackett*, 421 Mich at 348.

When a defendant seeks to admit evidence of a prior false accusation, he or she must "make an offer of proof as to the proposed evidence and to demonstrate its relevance to the purpose for which it is sought to be admitted." *Id*. at 350. "If there is a sufficient offer of proof as to a defendant's constitutional right to confrontation, as distinct simply from use of sexual

conduct as evidence of character or for impeachment, the trial court shall order an *in camera* evidentiary hearing to determine the admissibility of such evidence . . . ." *Id.* "In exercising its discretion [to determine the admissibility of a prior false accusation], the trial court should be mindful of the significant legislative purposes underlying the rape-shield statute and should always favor exclusion of evidence of a complainant's sexual conduct where its exclusion would not unconstitutionally abridge the defendant's right to confrontation." *Id*. at 349.

The prosecution filed a motion in limine, seeking an order precluding reference to a prior accusation of sexual assault made by EC in the past. Taylor opposed the motion, claiming that EC told him she had not been willing to testify regarding that incident because she had lied about it. Taylor did not offer any other information or evidence by way of an offer of proof. As previously noted, Taylor did not object to the prosecution's motion on constitutional grounds and, therefore, no *in camera* evidentiary hearing was held. However, the issue of EC's prior accusation was also raised at Taylor's preliminary examination, at which time the district court took brief testimony from EC's mother regarding the prior incident. EC's mother explained that approximately 25 years ago, EC's boyfriend and two of his friends took EC to a motel and sexually assaulted her. EC was 14 or 15 years old at the time. EC's mother testified that, as a nurse, she understood the process to which EC would be exposed if she pursued charges against the men. EC's mother did not want her daughter to experience additional trauma so she opted to take EC to counseling instead. EC's mother denied that EC ever said the assault did not occur and she, EC's mother, believed the allegation to be true because EC had injuries that required medical treatment after the incident.

On this record, Taylor has failed to establish plain error affecting his substantial rights. Taylor's only evidence that EC had previously made a false accusation of sexual assault was his own recollection of EC's alleged retraction. On the other hand, EC's mother testified about the veracity of the prior allegation and offered an alternative explanation for not pursuing criminal charges against EC's former assailants. Furthermore, while the nature of the incident is not clear from the record, we note that any sexual penetration of EC at the age of 14 or 15 years old could have been considered third-degree criminal sexual conduct, at minimum. See MCL 750.520d(1)(a). Because the existence of a prior false accusation was supported only by Taylor's own self-serving hearsay, we do not believe that the trial court plainly erred by granting the prosecution's motion to preclude reference to EC's prior accusation at trial. See, e.g., *Hackett*, 421 Mich at 349 (stating judicial preference for excluding evidence of a complaint's sexual history); *People v Williams*, 191 Mich App 269, 273-274; 477 NW2d 877 (1991) (finding that the defendant was not entitled to reversal of his conviction where he failed to offer concrete evidence that the victim made a prior false accusation of sexual abuse).

## B. JURY INSTRUCTIONS

Next, Taylor argues that the trial court violated his right to due process by failing to properly instruct the jury regarding third-offense domestic violence and habitual offender sentence enhancement. We disagree.

The essence of Taylor's argument is that he was convicted and sentenced under former MCL 750.81(4), which made a third domestic violence conviction punishable as a felony, and the trial court should have instructed the jury regarding the requirement of two previous domestic

violence convictions. Taylor similarly takes issue with the trial court's failure to instruct the jury regarding the fourth-offense habitual offender statute, MCL 769.12, in any manner. We first note that defense counsel expressed satisfaction with the final jury instructions, which effectively waived appellate review of this issue. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000) (explaining that affirmative approval of jury instructions extinguishes error). Taylor's argument lacks merit in any event. By statute, a defendant's prior convictions for purposes of establishing a third-offense domestic violence charge and for purposes of habitual offender sentence enhancement are matters that are determined by the court at the time of sentencing—not by the fact-finder at trial. See MCL 750.81b(a) and (b) (concerning domestic violence) and MCL 769.13(5) (concerning habitual offender sentencing enhancement). Because the existence of Taylor's prior convictions were not issues to be decided by the jury, the trial court did not err by failing to issue instructions regarding Taylor's prior convictions.

## C. HABITUAL OFFENDER NOTICE

Taylor next argues that he was deprived of due process when the trial court permitted the prosecution to give untimely notice of its intent to seek an enhanced sentence under MCL 769.12. We disagree.

Pursuant to MCL 769.13(1), if the prosecution intends to seek an enhanced sentence based upon the defendant's status as a habitual offender under MCL 769.10 through MCL 769.12, it must file a written notice of intent to do so "within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense." Taylor was bound over to the circuit court on August 4, 2016, the felony information was filed in the circuit court on August 16, 2016, and circuit court's register of actions suggests that Taylor was arraigned on the information on August 30, 2016.[8] Because the felony information contained the written notice required by MCL 769.13(1), the notice was clearly provided within the statutory time frame. Therefore, Taylor has failed to establish plain error affecting his substantial rights.

## D. PRELIMINARY EXAMINATION

Next, Taylor argues that his due-process rights were violated when the preliminary examination was adjourned from January 21, 2016, to February 9, 2016. We disagree.

While the record reflects that the preliminary examination was indeed adjourned from the originally scheduled date of January 21, 2016, defense counsel stipulated to the adjournment of which Taylor complains. By agreeing to the adjournment, counsel waived review of this issue. *Carter*, 462 Mich at 215 (explaining that "intentional relinquishment or abandonment of a known

---

[8] Taylor contends that he was arraigned on September 23, 2016. While the precise date of his arraignment is not clear from the record, the felony information contained the required notice and was filed well in advance of the arraignment, regardless of whether it took place on August 30, 2016, or September 23, 2016.

right" waives any resulting error) (quotation marks and citation omitted). Furthermore, the preliminary examination was adjourned several additional times, and Taylor does not challenge the subsequent adjournments. Taylor does not attempt to explain why the initial adjournment affected his substantial rights, nor can we fathom any prejudice arising from the initial adjournment given the later, unchallenged adjournments. Accordingly, Taylor has not demonstrated entitlement to appellate relief. See *Carines*, 460 Mich at 763.

## E. JUDICIAL PARTIALITY

Next, Taylor asserts that the trial court violated his due-process rights when it asked EC if she lost consciousness after being hit in the head. We disagree.

A trial court may question a witness "to clarify testimony or elicit additional relevant information." *People v Conyers*, 194 Mich App 395, 404; 487 NW2d 787 (1992). When doing so, "the trial court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial." *Id*. at 405. The ultimate question is whether the challenged conduct pierces the veil of judicial impartiality. *People v Stevens*, 498 Mich 162, 170; 869 NW2d 233 (2015). In reviewing a challenge to the impartiality of the trial court, a reviewing court should consider the issue in context, considering the totality of the circumstances, to determine whether the judge demonstrated the appearance of advocacy or partiality on the whole." *Id*. at 172.

Here, after EC testified at length during cross-examination regarding the numerous times that Taylor hit her in the head, the trial court interjected as follows:

> *The Court*: [EC], I just have one question I want to ask you, its—at one point when you were being struck—were there any times where you were ever unconscious or were you at least—was it affecting your ability to perceive what was going on?
>
> *The Witness*: No, I was fighting to make sure I stayed conscious.
>
> *The Court*: All right, so you were fighting—defending yourself?
>
> *The Witness*: Yes.

According to Taylor, this exchange implied to the jury that the trial court believed EC's testimony regarding the repeated violence she endured throughout the night because the court did not use the term "alleged" despite having done so when questioning EC about another matter.[9]

We find Taylor's position unpersuasive. The trial court did not express an opinion regarding the witness's testimony, nor did it express apparent bias in favor of EC or against

---

[9] In particular, the trial court asked EC to elaborate about the "alleged injury" defendant sustained to his leg before she picked him up.

Taylor. The trial court's questions appear to have been asked solely to elicit relevant facts to clarify what occurred during the incident and whether the witness was able to accurately perceive what happened. The totality of the circumstances simply does not rise to the level of piercing the veil of judicial impartiality or violating Taylor's right to a fair trial because it is improbable that the trial court's extremely limited inquiry "improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. Even if we agreed that the questions carried some implicit message, we cannot reasonably conclude that any error arising from the trial court's inquiry affected Taylor's substantial rights.

## VI. PROSECUTORIAL MISCONDUCT[10]

Taylor also argues in his Standard 4 Brief that he was denied a fair trial when the prosecution "suppressed" evidence of EC's previous allegations of sexual assault against other men. We disagree.

To preserve an issue of prosecutorial misconduct for appeal, the defendant must contemporaneously object and request a curative instruction. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Although Taylor opposed the prosecution's motion to preclude evidence of EC's prior allegations of sexual assault, he did not present the issue as one of prosecutorial misconduct or improper suppression of evidence. Accordingly, this issue is unpreserved. Unpreserved instances of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *Id*.

In a cursory manner, Taylor cites caselaw concerning so-called *Brady*[11] violations, which occur when the prosecution suppresses material evidence that is favorable to the accused. See *People v Chenault*, 495 Mich 142, 149-150; 845 NW2d 731 (2014). Taylor's argument misconstrues the essence of a *Brady* challenge, which may be appropriately brought when the defendant discovers that the prosecution *failed to disclose* material, favorable evidence. See *id*. at 153 (explaining that *Brady* applies to situations involving "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense") (quotation marks and citation omitted). The prosecution's use of pretrial motion practice to preclude Taylor's use of inadmissible evidence is not the type of "suppression" that implicates the *Brady*

---

[10] As recognized by this Court in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), although the phrase "prosecutorial misconduct" is used as a term of art in criminal appeals, it is a misnomer when used to describe technical or inadvertent errors that do not involve illegal conduct or other activity violating the rules of professional conduct. Allegations of less extreme error—i.e., error that would not warrant discipline under the rules of professional conduct—are more accurately described as claims of "prosecutorial error." *Id*.

[11] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

rule or the constitutional due-process rights upon which the rule is founded.  Accordingly, Taylor has failed to establish plain error affecting his substantial rights.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Anica Letica