*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALEXANDER LEE DOMBROWSKI, JR.,

Defendant-Appellant.

UNPUBLISHED
November 22, 2022

No. 352125
Hillsdale Circuit Court
LC No. 18-424400-FC

Before: GLEICHER, C.J., and SERVITTO and YATES, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant to concurrent prison terms of life without parole for the first-degree murder conviction and 40 to 60 years for the second-degree murder conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction. We affirm.

Defendant was convicted of fatally shooting his father, Alex ("Al") Dombrowski, Sr., and his father's live-in girlfriend's brother, Tim Curtiss, at his father's farmstead in Camden Township on August 16, 2018. Prosecution witnesses identified defendant as the shooter. The defense did not deny that defendant was the shooter, but argued that he was guilty of the lesser offense of voluntary manslaughter on the basis of the strange behavior that he exhibited before, during, and after the crimes. The jury found defendant guilty as charged.

Before trial, defendant had undergone two forensic evaluations and he was found competent to stand trial, capable of being criminally responsible, and not legally insane. After defendant filed his claim of appeal, this Court granted his motions to remand this case to the trial court to move for the appointment of medical experts and for a *Ginther*[1] hearing to develop a factual record in support of his claims of ineffective assistance of counsel. *People v Dombrowski*,

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

-1-

unpublished order of the Court of Appeals, entered August 14, 2020 (Docket No. 325125). Following the *Ginther* hearing, the trial court denied defendant's motion for a new trial on the basis of ineffective assistance of counsel.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he is entitled to a new trial because trial counsel was ineffective for several reasons. We disagree.

"Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*. The effective assistance of counsel is presumed, and the burden is on the defendant to establish the contrary. *People v Roscoe*, 303 Mich App 633, 644; 846 NW2d 402 (2014). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 22; 815 NW2d 589 (2012) (citation omitted), vacated in part on other grounds 493 Mich 864 (2012). "[A] reviewing court must conclude that the act or omission of the defendant's trial counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id*. at 22-23. The defendant has the burden of establishing the factual predicate of his ineffective-assistance-of-counsel claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

## A. INADEQUATE INVESTIGATION OF DEFENDANT'S MENTAL STATE

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). "A substantial defense is one that might have made a difference in the outcome of the trial." *Id*. (citation omitted.) "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (citation and quotation marks omitted). Counsel is ineffective for failing to properly prepare a meritorious insanity defense if the failure deprives the defendant of a reasonably likely chance of acquittal. *People v Hunt*, 170 Mich App 1, 13; 427 NW2d 907 (1988). Counsel is not, however, ineffective for failing to advance a meritless position. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant has not overcome the strong presumption that trial counsel's performance was within the range of reasonable professional conduct. *Gioglio (On Remand)*, 296 Mich App at 22. The record supports that, after investigation, trial counsel reasonably determined that an insanity defense would not be viable. Trial counsel contemplated the viability of an insanity defense before the preliminary examination. As a result of trial counsel's motion, the trial court ordered that

defendant be evaluated for criminal responsibility. The examiner concluded that defendant was criminally responsible, and thus defendant's mental status did not meet the requirements for legal insanity. Trial counsel explained that, hoping for a better outcome, he successfully acquired funds to obtain a second opinion from an independent examiner. Trial counsel further explained that, because he knew resources were very limited, he searched for the best expert he could. The examination took 4-1/2 hours and the examiner reviewed the files and other reports. The independent examiner, who had come "highly recommended," also concluded that defendant was criminally responsible. Thus, both forensic examiners reached the same conclusion. Defendant has not presented an appropriate offer of proof to refute these findings, or to otherwise show that he was legally insane at the time of the offense to support that counsel's decision not to further pursue additional examinations was objectively unreasonable.

Further, absent an appropriate offer of proof, defendant is unable to establish that he was prejudiced in this regard. Defendant has effectively received a third and fourth evaluation as a result of this Court remanding this case for the appointment of medical experts, both of whom examined defendant and testified at the *Ginther* hearing. Both experts opined that long-term use of methamphetamine and alcohol could negatively impact the brain and could support that defendant was mentally ill at the time of the offenses. One expert's diagnosis of defendant as having a "triple diagnosis," "[m]eaning substance abuse, substance dependency, mental illness and brain injury" would not, standing alone, have given defendant a legal insanity defense at trial. The second expert testified that defendant did not appear to be cognitively impaired. While both experts believed that a brain scan would have been useful to provide more information, the evidence was also clear that a brain scan was not the standard of care for someone presenting with substance abuse and schizophrenia. Thus, considering that this suggested course of action was not the medical standard of care, and that the defense had already received conclusions from two forensic examinations, counsel made a reasonable decision that further investigation was not necessary. See *Trakhtenberg*, 493 Mich at 52. But even considering defendant's assertion that he suffered from "a mental illness," a defendant does not establish the affirmative defense of insanity by merely establishing that he suffered from mental illness. MCL 768.21a(1). Thus, defendant has not established the factual predicate for his claim. *Douglas*, 496 Mich at 592. Because the record discloses that the viability of an insanity defense was investigated before trial, that there was no evidence to support that defense, and that defendant has not demonstrated that trial counsel was ineffective for not making further inquiries regarding his mental state, defendant has not established that trial counsel was ineffective on this basis. *Ericksen*, 288 Mich App at 201.

## B. FAILURE TO PRESENT A VOLUNTARY INTOXICATION DEFENSE

MCL 768.37 abolished voluntary intoxication as a defense, subject to one limited exception. Voluntary intoxication may be a defense to "a specific intent crime" if the defendant can establish "by a preponderance of the evidence, that he or she voluntarily consumed a legally obtained and properly used medication or other substance and did not know and reasonably should not have known that he or she would become intoxicated or impaired." MCL 768.37(2). Defendant has not demonstrated that trial counsel was ineffective by failing to present a voluntary intoxication defense. Preliminarily, given the evidence presented at the *Ginther* hearing, counsel did not know that defendant had consumed alcohol or ingested drugs. Defendant admitted that he did not inform trial counsel that he had ingested drugs or consumed alcohol. Defendant also denied ingesting any drugs before the offenses during his forensic evaluations before trial. Trial counsel

testified that he asked defendant whether he had used any drugs, including methamphetamine, and defendant insisted that he had not. Defendant made it clear that his methamphetamine abuse was "long over with" by the incident date. Trial counsel chose to believe defendant's denial of drug use on the basis of counsel's experience with numerous clients who were methamphetamine users, and defendant did not appear to be one. Rather, when counsel met with defendant after his arrest, defendant was "very intelligent and very polite to me and knew what he was doing[,] what he was saying . . . . He did not seem like he was on drugs." Furthermore, defendant does not argue that he did not know or reasonably should not have known that he would become intoxicated or impaired when he voluntarily ingested drugs. Consequently, trial counsel's belief that defendant had not ingested drugs was objectively reasonable, and defendant has not demonstrated that a voluntary intoxication defense would have otherwise been available to him.

## C. FAILURE TO INTERVIEW WITNESSES

Defendant also asserts that trial counsel "made no attempt to interview" Juanita Dombrowski, Joe Curtiss, or any family members "to obtain perspective on his client's aberrant behavior" to support a defense. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (citation omitted).

At the *Ginther* hearing, trial counsel testified that he did not remember speaking with defendant's family members or other potential witnesses before trial. His most important trial strategy was to "bring out" as much as he could about how strange defendant's behavior was at the time incident, and he sought to accomplish this during his cross-examination of the prosecution witnesses, who were essential to the defense. The record shows that trial counsel followed this strategy.

In opening statement, counsel encouraged the jurors to keep an open mind, stated that there would be some mitigating circumstances that would allow the jurors to find "a lesser verdict than first-degree murder," and stated that "you've already heard the first part about the possibly saying that the defendant was acting paranoid." During trial counsel's cross-examination of several witnesses, he asked about defendant's odd or strange behavior before and during the offenses. Further, the two witnesses whom defendant actually names, Joseph Curtiss (Tim's brother) and Juanita Dombrowski (defendant's sister), both testified at trial.

Joseph testified that, before the incident, defendant came to his house and, at one point, defendant went on the deck and was acting "real paranoid," wandering throughout the home, peering out the windows, and called for his sister Juanita, who was not there, while standing on the deck. Defendant retrieved Joseph's gun and, in response to Joseph's inquiry about why defendant had his gun, defendant stated that "he was a US Marshal" with "orders to kill two people"; defendant did not identify the people who he was ordered to kill. Later, when he and Tim were summoned to Al's house, defendant was standing in the yard, holding a gun "like a solider." Juanita testified that defendant "said some strange things" to her. After hearing that her father had been shot, she drove to the house and saw defendant, who was shirtless and standing by the mailboxes at the end of the driveway "in an assertive stance." Shortly thereafter, Juanita saw defendant standing outside. She stated that he was "just staring at the house blank, like no expression; he didn't seem excited or agitated or he seemed empty like just staring at the house."

-4-

Juanita further testified, on cross-examination, that defendant "looked like he was in a trance," had a "blank stare," and he "looked like a zombie."

Additionally, at the outset of closing argument, trial counsel argued: "There's also a third option that the Prosecutor does not want you to do and that is voluntary manslaughter is a lesser offense." Trial counsel then detailed testimony from witnesses regarding defendant's strange behavior, and argued that his unusual behavior supported the lesser offense of voluntary manslaughter. Even if trial counsel did not interview certain witnesses before trial, the record discloses that argument and evidence about defendant's aberrant behavior was clearly presented to support the trial strategy. In other words, it is not reasonably probable that the outcome of the trial would have been different had trial counsel interviewed witnesses before trial. *Nix*, 301 Mich App at 207. Consequently, defendant cannot establish an ineffective-assistance-of-counsel claim on this basis.

### D. VOLUNTARY MANSLAUGHTER

Defendant further faults trial counsel for arguing for a voluntary manslaughter instruction, but then failing to present any evidence to support this theory. At the *Ginther* hearing, trial counsel explained that he was forced to change his trial strategy because, after the forensic center and independent psychologist's evaluations of defendant, the option of pursuing an insanity defense was foreclosed. Therefore, he made a strategic decision to pursue a manslaughter defense and emphasize the odd or aberrant way defendant was acting near the time of the offenses. Given the facts, trial counsel's decision to pursue a voluntary manslaughter defense was objectively reasonable. Indeed, even defendant recognizes that the evidence against him was very "strong." Defendant complains that trial counsel failed to present any defense, yet complains that counsel argued for voluntary manslaughter. Defendant also asserts that trial counsel failed to present any evidence to support voluntary manslaughter. As discussed earlier, however, the record shows that trial counsel emphasized defendant's strange behavior when both questioning witnesses and in closing argument. Trial counsel's decision fell within the range of reasonable professional conduct, particularly given the strong evidence against defendant and the unavailability of an insanity or voluntary intoxication defense. *Gioglio (On Remand)*, 296 Mich App at 22. "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Consequently, defendant cannot establish an ineffective-assistance-of-counsel claim on this basis.

### E. ADVISING DEFENDANT NOT TO TESTIFY

Defendant next briefly contends that counsel was ineffective for advising him not to testify. A criminal defendant has a fundamental constitutional right to testify at trial. US Const, Am XIV; Const 1963, art 1, §§ 17, 20. "Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla–Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). The decision to testify or not to testify is a strategic one "best left to an accused and his counsel." *People v Martin*, 150 Mich App 630, 640; 389 NW2d 713 (1986). "If the accused expresses a wish to testify at trial, the trial court must grant the request, even over counsel's objection." *People v Simmons*, 140 Mich App 681, 685; 364 NW2d 783 (1985). "[I]f defendant . . . decides not to testify or acquiesces in his attorney's decision that he not testify, the right will be deemed waived." *Id*. (quotations and citation omitted).

Defendant has not demonstrated that trial counsel was ineffective for advising him against testifying and deciding not to call him as a witness. It is undisputed that defendant and trial counsel discussed whether defendant should testify. Although trial counsel did not recall what specific reasons he gave to defendant, testimony supports that there were strategic reasons for not having defendant testify. Trial counsel testified that a crucial part of his trial strategy was to show how "strange" defendant's actions were at the time of the incidents. Trial counseled reasoned that he could "make his case" by cross-examining the prosecution's eyewitnesses who observed defendant's behavior that night, and emphasizing how strange defendant's actions were. On the basis of trial counsel's interactions with defendant, he found defendant to be "very intelligent and very polite," "knew what he was doing[,] what he was saying." Thus, calling defendant as a witness risked harming the argument that defendant was mentally unstable. As the trial court observed when denying defendant's motion for a new trial, "[i]f [trial counsel] wanted the jury to believe that his client exhibited odd behavior, asking a well-spoken defendant to testify, would belie that behavior." The decision whether to call defendant as a witness was a matter of trial strategy, *Russell*, 297 Mich App at 716, for which counsel has wide discretion, *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012), and defendant has not identified or offered any evidence to overcome the strong presumption of sound strategy in counsel's advice that defendant not testify. That counsel's strategy ultimately failed does not render his performance deficient. *Matuszak*, 263 Mich App at 61.

Further, there is no indication in the record that defendant expressed a desire to testify to counsel. Trial counsel testified that had defendant wanted to testify, he would have put him on the stand. Defendant admitted that he made the final decision not to testify because he trusted trial counsel. Trial counsel testified that defendant made the final decision to not testify. The record from trial supports trial counsel's testimony. After the prosecution rested, trial counsel stated: "I've discussed it with him and I believe he wants to follow my lead that I suggested he not testify as part of our strategy." The trial court then questioned defendant at length, which included the following exchange:

> *The court*: Okay, now let[s] just give you your options, okay? I don't care what [trial counsel] says, okay? This is just between you and I right now, all right? So let me just advise you of your options.
>
> You understand you do have the right to testify and if you choose to testify you would be subject to cross-examination by the prosecution. That's one option. Do you understand that?
>
> *Defendant*: Yes, your Honor.
>
> *The court*: Okay, your other option is that you do not have to testify and I instructed the jury that now a number of times that you don't have to put on any of this; no obligation whatsoever.
>
> Now, if You do not testify there is an instruction that I will give that they can't use that against you in any manner, okay, because that is your Constitutional right. Do you understand that?

*Defendant*: Yes, your Honor.

*The court*: That's option Number 2.

Have you discussed these options with [trial counsel]?

*Defendant*: Yes, your Honor.

*The court*: Okay, is it your decision? I don't care about [trial counsel's] decision. I'm asking your decision [sic] choose not to testify?

*Defendant*: Yes, your Honor.

*The court*: Okay, and -- and you understand your two options?

*Defendant*: Yes, your Honor.

*The court*: Okay, and as a matter of trial strategy, you do not wish to testify; is that correct?

*Defendant*: Yes, your Honor.

*The court*: Okay, and this is your decision, not [trial counsel's]?

*Defendant*: Yes, your Honor.

Defendant does not claim that he was ignorant of his right to testify, or that trial counsel coerced him into not testifying. Based on the foregoing, defendant cannot show that trial counsel was ineffective for advising him not to testify.

## II. *PEOPLE V CARPENTER*

Lastly, defendant, citing *People v Carpenter*, 464 Mich 223, 241; 627 NW2d 276 (2001), acknowledges that a diminished-capacity defense is no longer viable in Michigan, but argues that *Carpenter* was wrongly decided and should be revisited. In *Carpenter*, our Supreme Court observed that the Legislature had enacted a comprehensive statutory scheme concerning defenses based on mental illness or retardation, and held that, as a result, the diminished-capacity defense is no longer available. *Id.* at 230-232, 236, 241. Before this legislative activity and *Carpenter*, the diminished-capacity defense allowed "a defendant, even though legally sane, to offer evidence of some mental abnormality to negate the specific intent required to commit a particular crime." *Id.* at 232. Although defendant urges otherwise, we are bound to follow decisions of our Supreme Court that have not been overruled or superseded. *People v Anthony*, 327 Mich App 24, 44; 932 NW2d 202 (2019). Consequently, we decline defendant's invitation to revisit *Carpenter*, as we

are required to apply it, and reject defendant's request for a new trial.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Christopher P. Yates